T.C. Memo. 2010-67

UNITED STATES TAX COURT

KENNETH R. LINDBERG, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5421-08L.               Filed April 6, 2010.

Kenneth R. Lindberg, pro se.

<u>Michael A. Pesavento</u>, for respondent.

MEMORANDUM OPINION

MORRISON, <u>Judge</u>:   This case is before this Court on respondent Internal Revenue Service's (IRS) motion for summary judgment and to impose a penalty under section 6673.  The issue is whether to sustain the IRS's determination to collect by means

of a proposed levy a frivolous-return penalty for petitioner's 2004 tax return under section 6702.[1]

## Background

Petitioner Kenneth R. Lindberg earned and was paid wages of $43,156.03 in 2004. That he earned and was paid those wages was reflected on the Form W-2, Wage and Tax Statement, that was sent to the IRS by his employer, Accraply, Inc. (Accraply), and was later confirmed by Accraply in writing in a signed questionnaire and earnings statement requested by the IRS pursuant to an examination request dated January 30, 2007.

Lindberg submitted to the IRS a signed 2004 income-tax return that was dated February 14, 2005. He wrote the number zero in all of the boxes for reporting items of gross income (including the box for wages), except that he entered $7 of taxable interest. Because Lindberg reported only $7 of gross income, and because he claimed a standard deduction of $4,850 and a personal exemption of $3,100, Lindberg reported taxable income of negative $7,643 on his tax return. He reported that his employer had withheld $5,315.56 of Federal income tax.[2] He

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code), and all Rule references are to the Tax Court Rules of Practice and Procedure. Lindbergh resided in the State of Minnesota at the time he filed his petition and thus this case is appealable to the Court of Appeals for the Eighth Circuit. See sec. 7482(b)(1).

[2]Actually, $5,315.56 was the total amount withheld for three
(continued...)

requested a full refund of that amount ($5,315.56) in the appropriate box.

Lindberg did not attach a Form W-2 to his return.  Instead, he attached IRS Form 4852, Substitute for Form W-2, Wage and Tax Statement, or Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc.[3]  In item 7 of the Form 4852, he listed $1,945.51 as Federal income tax withheld, $861.04 as State tax withheld, $2,731.28 as Social Security tax withheld, and $638.77 as Medicare tax withheld (for a total of $6,176.60).  Those amounts were consistent with the amounts reported on the actual Form W-2 and other documents his employer submitted to the IRS.  He reported zero in total wages, zero in wages subject to Social Security tax, and zero in wages subject to Medicare tax in item 7.  Lindberg answered two questions as follows:

8.    How did you determine the amounts in item 7 above?

---

[2](...continued)
types of Federal taxes: The income tax, the Social Security tax, and the Medicare tax.

[3]According to the instructions for Form 4852, the form serves as a substitute for Forms W-2 and 1099-R and is to be completed by taxpayers when (a) their employer or payer does not give them a Form W-2 or Form 1099-R, or (b) when an employer or payer has issued an incorrect Form W-2 or Form 1099-R.

We surmise from Lindberg's answer to question 9 that Lindberg did receive a Form W-2 from his employer, but he believes it was incorrect because it failed to report "wages as defined in 3401(a) and 3121(a)."

Company provided records and the statutory language behind IRC sections 3401 and 3121 and others

9.   Explain your efforts to obtain Form W-2, 1099-R, or W-2c, Statement of Corrected Income and Tax Amounts.

Requested, but the company refuses to issue forms correctly listing payments "wages as defined in 3401(a) and 3121(a)" for fear of IRS retaliation.  The amounts listed as withheld on the w-2 it submitted are correct, however.

The IRS assessed a frivolous-return penalty under section 6702(a) against Lindberg on February 19, 2007.  The IRS sent Lindberg a Final Notice of Intent to Levy and Notice of Your Right to a Hearing on July 11, 2007, to initiate the process of collecting the penalty, and the interest on the penalty, by levy.

In response, Lindberg submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing, dated August 6, 2007, to the IRS.  Attached to the form was a long list of requests and claims.  Lindberg requested "collection alternatives including Offer in Compromise (OIC), payment schedule, CNC (Currently Not Collectible), hardship, etc.," but he did not make a specific offer in the request or at any later point.  He also requested a face-to-face hearing, claiming he would bring appropriate forms and that he had "relevant information to be considered for collection alternatives."  He argued that neither a notice of deficiency nor a notice and demand for payment of the

penalty was sent to his last known address.[4]  He stated that no
assessment had been made.  He requested (i) proof that the IRS
had verified that the requirements of all applicable law and
procedure had been met, (ii) proof that a notice of deficiency
and notice and demand for payment of the penalty had been sent,
and (iii) "assessment documentation," including a Form 4340,
Certificate of Assessments, Payments, and Other Specified
Matters.  He stated that he challenged the existence and amount
of the frivolous-return penalty in his collection due process
(CDP) hearing under section 6330(c)(2)(B) because he did not
receive a notice of deficiency and thus had not yet had an
opportunity to make such a challenge.  He demanded to know why
the IRS considered his return to be frivolous.  He denied that
the requirements for imposing a frivolous-return penalty had been
met.  He also suggested that

> I may withdraw any Constitutional, moral, political,
> religious or conscientious arguments that I have
> heretofore made, if any.  Further, I also may withdraw
> any legal positions which are classified and published
> by the IRS as "frivolous or groundless," if any.  This
> includes any arguments that the courts have determined
> are frivolous or groundless, or published on the IRS
> website.

He argued that the proposed collection action (i.e., the levy)
"does not balance with the needs for the Service to collect the
tax and, considering the circumstances, it is an intrusive action

---

[4]As discussed below, a notice of deficiency is not required
before the IRS can assess a sec. 6702 penalty.  Sec. 6703(b).

and more intrusive than necessary".  He alleged that the collection action was "inappropriate" as "the administrative record [was] invalid and incomplete."  The remainder of the document contains material that is irrelevant or nonsensical. For example, he requested that a notice of tax lien be withdrawn, even though none was issued to him.

On August 22, 2007, the IRS sent Lindberg a letter stating that the IRS was forwarding his CDP hearing request to the Appeals Office in Fresno, California.[5]  On October 25, 2007, the Fresno Appeals Office sent Lindberg a letter proposing to hold his CDP hearing by telephone on November 21, 2007.  The letter stated that the IRS considered the arguments in his request for a hearing to be frivolous.  It offered a face-to-face hearing on any nonfrivolous issue Lindberg could identify in writing by November 9, 2007, and warned him that this Court could impose sanctions on him under section 6673 if he raised frivolous issues before the Court to delay resolution of the case.[6]

---

[5]The record does not explain why the IRS chose to forward his request to its Fresno office instead of its St. Paul office, the latter of which was closer to Lindberg's residence.

[6]The Fresno office conditioned a face-to-face hearing on Lindberg raising a nonfrivolous issue.  This condition is consistent with sec. 301.6330-1(d)(1), Q&A-D8, Proced. & Admin. Regs., which states that a face-to-face hearing "will not be granted if the request for a hearing or other taxpayer communication indicates that the taxpayer wishes only to raise irrelevant or frivolous issues".  See infra note 9 regarding requests for a face-to-face hearing when the taxpayer requests

(continued...)

Lindberg responded on November 6, 2007, with a letter rejecting the invitation to a telephone hearing and requesting instead a face-to-face hearing in Greenville, South Carolina, or the "nearest big city" to him.[7]  He denied that he was raising frivolous arguments and stated that he withdrew any such arguments.  He claimed that at a face-to-face hearing he wished to discuss "procedural irregularities, liability for penalties, etc., plus collection alternatives" and requested "the necessary forms to effect this, including the financial statement form."

The IRS transferred his case from Fresno, California, to St. Paul, Minnesota, a city near Lindberg's residence, on November 19, 2007.  The Appeals officer assigned to the case in St. Paul sent Lindberg a letter on December 20, 2007, to schedule a CDP hearing by telephone on January 16, 2008.  The Appeals officer explained that the Appeals Office does not offer face-to-face hearings to those advancing only frivolous arguments or to those requesting collection alternatives for which they do not qualify. He requested that Lindberg submit copies of all of his unfiled returns from 1999 to 2006 and provide financial information on Form 433-A, Collection Information Statement for Wage Earners and

---

[6](...continued)
collection alternatives for which he or she does not qualify.

[7]Lindberg does not explain nor does the record explain why he requested Greenville, South Carolina, as a possible location for a face-to-face hearing.

Self-Employed Individuals, so that collection alternatives could be considered.[8]  The Appeals officer offered Lindberg a face-to-face hearing provided that he file all of his past-due returns but explained that he could not grant one until the returns were filed.[9]  The Appeals officer wrote that the penalty could be abated if a taxpayer "ignore[s] the bad advice [he has] received, file[s] and agree[s] to pay [his] taxes."

Lindberg responded with a letter dated January 2, 2008, in which he once again demanded a face-to-face hearing and also requested "all relevant administrative records relating to this collection procedure."  He claimed again to withdraw any frivolous positions.  He declined to file his returns because the Appeals officer had not cited the Code section requiring him to do so:

> Further to your request that I "file the delinquent tax returns from 1999 [2000] to 2006 (1999 is filed) and complete Form 433-A" enclosed in your letter.  I respectfully decline to comply with this request for two reasons: (1) you failed to state the relevant law that would require me to file and/or complete such

---

[8]Lindberg did not file tax returns for the tax years 1999-2003 and 2005-2006.

[9]Thus, the St. Paul office identified an impediment to a face-to-face hearing that the Fresno office had not:  it told Lindberg that even a request for a collection alternative could not be discussed face-to-face unless Lindberg submitted past-due tax returns and financial information.  See sec. 301.6330-1(d)(2), Q&A-D8, (e)(1), Proced. & Admin. Regs.  The St. Paul office gave Lindberg an opportunity to file the returns and submit the documents.  Only after Lindberg failed to do so did the Appeals officer refuse a face-to-face meeting.

returns and forms, and (2) this appears to be an ex parte request for private and personal information.

The Appeals officer sent a response dated January 4, 2008, in which he explained:

> I've read and considered your letter dated 01/02/2008. In short, you are not entitled to a face to face hearing because you decline to take the steps necessary to qualify for one.  You decline to file your delinquent 1040 tax returns or complete a form 433-A. Without compliance and financial disclosure, you don't qualify for the alternatives to collection action that you raised.[10]  Appeals doesn't grant a face to face hearing to taxpayers who don't qualify for the relief they request. * * *
>
> Furthermore, your statement [that you withdraw your legal positions classified as frivolous] does not constitute you actually abandoning your frivolous tax arguments.  The first step to withdrawing from a frivolous position against filing and paying Federal taxes would be to file your delinquent tax returns. The second step, assuming that you couldn't full pay the balances due on your 1999-2006 delinquent returns, would be to submit the form 433-A financial I requested.

The Appeals officer also asserted that he was not required to provide copies of each document he used to verify that the requirements of any applicable law or administrative procedure were met.  He stated that he would mail Lindberg a transcript of account[11] once it was available, and he mentioned that Lindberg

---

[10]Lindberg had not raised any collection alternatives in his prior correspondence but claimed in his letter of Jan. 2, 2008, that he would do so if offered a face-to-face hearing.

[11]A transcript of account is an IRS record for a particular taxpayer which reveals certain data, including whether the taxpayer filed a return for a given year, and if so, on what

(continued...)

could file a Freedom of Information Act request to obtain the other documents he sought.  The Appeals officer mailed the transcript of account to Lindberg on January 7, 2008.

Lindberg demanded a face-to-face hearing again by letter dated January 14, 2008.  He refused to call in for the telephone CDP hearing scheduled for January 16, 2008.  As no face-to-face hearing or telephone hearing took place, the Appeals officer made a determination based solely on the documents in Lindberg's case file, a procedure permitted by section 301.6330-1(d)(2), Q&A-D7, Proced. & Admin. Regs.  The Appeals officer noted in the case activity record that "As to his claim on the liability issue, I have looked at the correspondence, * * * and all other supporting documents.  The balance due is legally due and owing."  The Appeals officer subsequently issued a Notice of Determination Concerning Collection Action(s)Under Section 6320 and/or 6330 on February 6, 2008.  In the notice, the Appeals officer stated that he had reviewed the IRS's transcript of Lindberg's account and verified that the requirements of all applicable law or

---

<sup>11</sup>(...continued)
date.  Canzano v. Commissioner, T.C. Memo. 1983-320.  The Form 4340 is a computer-generated list of assessments, payments, and other activity on a taxpayer's account that appears in the official records of the IRS with respect to that taxpayer as of the date the form is printed.  Oropeza v. Commissioner, T.C. Memo. 2009-244; Armstrong v. Commissioner, T.C. Memo. 2002-224. The information contained on a transcript of account is not as readily comprehensible as that on the actual return or on the Form 4340 because the transcript contains abbreviations and computer codes.

administrative procedure had been met pursuant to section 6330(c)(1).  He also stated that he had determined that the proposed collection action (i.e., levy) appropriately balanced the efficient collection of taxes with Lindberg's legitimate concern that the collection action be no more intrusive than necessary pursuant to section 6330(c)(3)(C).  He reiterated why he could not grant a face-to-face hearing and noted that Lindberg had failed to participate in the January 16, 2008, telephone hearing or to reschedule it.  He therefore sustained the proposed levy action.

On March 3, 2008, Lindberg timely petitioned this Court.  In his petition, he stated that he was not required to "[fill] out forms[12] and [submit] a payment schedule" to the IRS and that he had a right to a face-to-face hearing under the Code and the regulations.  He requested no specific relief.  The IRS filed a motion for summary judgment and to impose a section-6673 penalty on January 1, 2009.  On February 9, 2009, Lindberg filed an objection to the motion for summary judgment and to impose the penalty.

In its motion the IRS argues that Lindberg's return, which contained zeros in all gross income boxes except for one item of taxable interest, is an essentially "zero income return which on

---

[12]Lindberg did not clarify whether the forms he referred to included past-due income tax returns or Form 433-A, the collection information statement, or both.

its face makes the frivolous argument that wages are not taxable". The IRS interprets his comments in box 9 of Form 4852 to constitute an argument that sections 3401(a) and 3121(a) exclude his wages from taxation and that a correct Form W-2 would have disclosed wages of zero.[13] The IRS asserts that Lindberg's

---

[13]The IRS's summary judgment motion says: "According to petitioner, the statutory language behind I.R.C. §§ 3401 and 3121 excludes his wages from taxation." On the same page, the IRS accuses Lindberg of making "the frivolous argument that wages are not taxable." We believe the IRS meant that Lindberg took the position that the payments he received were not wages as defined in secs. 3401 and 3121 and that therefore the payments were exempt from taxation. Thus, the IRS would place Lindberg in the same category as the taxpayers in United States v. Hendrickson, 99 AFTR 2d 2007-1470 (E.D. Mich. 2007), and Herriman v. United States, 104 AFTR 2d 2009-7581, 2009-2 USTC par. 50,784 (M.D. Fla. 2009). Peter Eric Hendrickson, author of the book Cracking the Code: The Fascinating Truth About Taxation in America, filed joint returns on which he reported zero wages. United States v. Hendrickson, supra at 2007-1471. Like Lindberg, he attached a Form 4852 and answered item 7 as follows: "Request, but the company refuses to issue forms correctly listing payments of 'wages as defined in 3401(a) and 3121(a)' for fear of IRS retaliation. The amounts listed as withheld on the W-2 it submitted are correct, however." Id. Defending his return in a criminal case related to the same tax years, Hendrickson claimed that his return was justified because "an individual whose activities are merely those of common right, such as those working for remuneration in the private sector * * * was not an 'employee' and the remuneration he earned was not 'wages', as those terms of art are defined in the tax laws." United States v. Hendrickson, 664 F. Supp. 2d 793, 796 (E.D. Mich. 2009).

Robert Herriman filled out substitute Forms W-2, and, like Lindberg, declared wages of zero because of "company provided records and the statutory language behind IRC sections 3401 and 3121 and others." Herriman v. United States, supra at 2009-7582, 2009-2 USTC par. 50,784, at 90,527. Herriman's position, as he described it in court, also was that private-sector employees are not employees within the meaning of sec. 3401(c). Id.

(continued...)

reporting of the $7 of taxable interest does not mitigate the frivolous nature of his return. The IRS argues that (i) taxpayers who raise frivolous arguments in their request for a hearing are not entitled to face-to-face collection hearings and that (ii) taxpayers who do not file past-due returns and submit financial information do not qualify for consideration of collection alternatives. Regarding Lindberg's demand for documents, the IRS argues that a taxpayer has no right to conduct discovery during a CDP hearing. The IRS argues that sanctions under section 6673 are appropriate because it maintains that Lindberg argued, both in documents submitted during the Appeals process, and in his petition, that he is not obligated to file a return.

In his objection to the motion for summary judgment, Lindberg states that he disagrees with "all of the notice of determination." He asserts that he has a right to all pertinent documents from the IRS so that he can confirm they are accurate

---

[13](...continued)
We discuss Hendrickson and Herriman in order to distinguish these theories from the theory that wages are not income. A proponent of the latter theory concedes to have earned wages but argues that the wages are not taxable because there is supposedly no gain from receiving compensation for the "loss" of one's labor. See Casper v. Commissioner, 805 F.2d 902, 904-905 (10th Cir. 1986), affg. T.C. Memo. 1985-154; Stelly v. Commissioner, 761 F.2d 1113, 1115 (5th Cir. 1985), affg. an unpublished decision of this Court; Rev. Rul. 2007-19, 2007-1 C.B. 843, 844; Rev. Rul. 2004-29, 2004-1 C.B. 627, 627.

and determine whether there were any procedural irregularities.

Specifically, he claims that

> Settlement Officer, Marty Luhman, may have failed to properly verify that the requirements of any applicable law or administrative procedure have been met. * * * Petitioner also challenges that proper procedures in the assessment were followed. Denying a request to see the assessment under 26USC 6203 (see 26CFR 301.6203-1) and the determination with supervisor approval under 26USC sec. 6751 are just two examples of procedural irregularities.

He again asserts that he was improperly denied a face-to-face hearing under the Code and the regulations. He argues that his return is not frivolous, citing two internal memoranda written by attorneys in the IRS Office of Chief Counsel, and claims that he withdrew any frivolous positions that he had previously adopted. Thus he concludes that he also should not be liable for any sanction under section 6673.

## Discussion

We are asked to decide whether summary judgment and sanctions under section 6673 are appropriate. We shall first address the issue of summary judgment.

## I. Summary Judgment

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. FPL Group, Inc. & Subs. v. Commissioner, 116 T.C. 73, 74 (2001). A motion for summary judgment will be granted if the pleadings, answers to interrogatories, depositions, admissions, and other acceptable

materials, together with any affidavits, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. Rule 121(b); Elec. Arts, Inc. v. Commissioner, 118 T.C. 226, 238 (2002). A partial summary adjudication may be made which does not dispose of all the issues in the case. Rule 121(b); Tracinda Corp. v. Commissioner, 111 T.C. 315, 323-324 (1998). The moving party, here the IRS, has the burden of proving that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Rauenhorst v. Commissioner, 119 T.C. 157, 162 (2002).

A.   Matters That Must Be Considered at the Section 6330 Hearing

The IRS is authorized to collect a tax by levy. Sec. 6331(a). A "tax" includes the liability for the section 6702 frivolous return penalty. Sec. 6665(a)(2). Section 6330(a)(1) and (b)(1) provides that before the IRS may impose a levy, it must notify the taxpayer that the taxpayer has a right to an administrative hearing, and it must conduct such a hearing if one is requested.

Certain issues must be considered by the Appeals officer, even if the taxpayer did not raise them. The Appeals officer is required to verify that "the requirements of any applicable law or administrative procedure have been met." Sec. 6330(c)(1); see also sec. 6330(c)(3)(A). The Appeals officer is also required to take into consideration whether the proposed collection action

"balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." Sec. 6330(c)(3)(C).

Section 6330(c)(2)(A) prescribes the matters that a taxpayer may raise at a hearing. Those matters include spousal defenses, the appropriateness of the IRS's intended collection action, and possible collection alternatives. Section 6330(c)(2)(B) provides that the existence and amount of the underlying tax liability can also be contested at an Appeals Office hearing, but only if the person did not receive a notice of deficiency for the tax in question or did not otherwise have an opportunity to dispute the tax liability. The Appeals officer must take into consideration the issues the taxpayer raises under section 6330(c)(2)(A) and any challenge to the underlying tax liability if it is permitted by section 6330(c)(2)(B). Sec. 6330(c)(3)(B). At the end of the hearing, the Appeals officer issues a notice of determination containing his or her decision to sustain or suspend the levy.

B.  <u>Standard of Judicial Review of a Section 6330 Determination</u>

Section 6330(d)(1) provides a person with the right to obtain Tax-Court review of the administrative determination.[14]

---

[14]Before 2006, the Tax Court had no jurisdiction to hear a challenge to the collection of a frivolous-return penalty because the Tax Court would not have had jurisdiction to determine the amount of the liability for the penalty. Former sec. 6330(d)(1), as in effect before Oct. 16, 2006 (the Tax Court has jurisdiction
(continued...)

Where the validity of the underlying tax liability is properly at issue, the Court will review the determination de novo.  Davis v. Commissioner, 115 T.C. 35, 39 (2000).  We review the balance of the IRS's determination for abuse of discretion.  Sego v. Commissioner, 114 T.C. 604, 610 (2000).  Generally we consider only those arguments, issues, and other matters that the taxpayer raised at the collection hearing or otherwise brought to the attention of Appeals.  Magana v. Commissioner, 118 T.C. 488, 493 (2002); see also sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.  Whether an abuse of discretion has occurred depends upon whether the exercise of discretion is without sound basis in fact or law.  Freije v. Commissioner, 125 T.C. 14, 23 (2005).

Lindberg did not receive a notice of deficiency with respect to the frivolous-return penalty because no such notice is required under the Code.  See sec. 6703(b).  The IRS was entitled to assess the penalty immediately, and it did so.  As Lindberg

---

14(...continued)
to review an IRS collection determination only if the Tax Court would have had jurisdiction over the amount of the underlying liability that is the subject of the collection hearing); Callahan v. Commissioner, 130 T.C. 44, 47-48 (2008).  The Pension Protection Act of 2006, Pub. L. 109-280, sec. 855, 120 Stat. 780, 1019, gave this Court jurisdiction to review an appeal from a notice of a collection determination issued after Oct. 16, 2006, regardless of the type of underlying liability involved.  See Callahan v. Commissioner, supra at 48-49.  The IRS issued the notice of determination in this case on Feb. 6, 2008, which is after the effective date of the Pension Protection Act of 2006.  Thus, we have jurisdiction to review it.

did not receive a notice of deficiency or otherwise have an opportunity to be heard, he was entitled to contest the penalty at his section 6330 hearing.  See sec. 6330(c)(2)(B).[15]  Accordingly, as the underlying tax liability is properly at issue, we review liability for the penalty de novo and the balance of the IRS's determination for abuse of discretion.  See Rice v. Commissioner, T.C. Memo. 2009-169.

    C.    Whether IRS Is Entitled to Summary Judgment

A taxpayer is liable for a frivolous-return penalty under section 6702 if three requirements are met.[16]  First, the

---

[15]Although Lindberg could have contested the penalty by paying the penalty and suing for a refund in District Court, this Court has implicitly held that the option of paying the penalty and filing a refund suit is not an opportunity to dispute liability for the penalty within the meaning of sec. 6330(c)(2)(B).  See Stockton v. Commissioner, T.C. Memo. 2009-186; Rice v. Commissioner, T.C. Memo. 2009-169.

[16]Sec. 6702 as in effect when Lindberg submitted his return provides in relevant part:

SEC. 6702. FRIVOLOUS INCOME TAX RETURN.

    (a) Civil Penalty.--If--

        (1) any individual files what purports to be a return of the tax imposed by subtitle A but which--

            (A) does not contain information on which the substantial correctness of the self-assessment may be judged, or

            (B) contains information that on its face indicates that the self-assessment is substantially incorrect; and

                    (continued...)

taxpayer must file a document that purports to be an income tax return. Sec. 6702(a)(1). Second, the purported return must suffer from one of the following defects: it either (a) lacks the information needed to judge the substantial correctness of the self-assessment[17] or (b) contains information indicating the self-assessment on the purported return is substantially incorrect. Id. Third, the defect must be due to a position (a) that is frivolous or (b) demonstrates a desire to delay or impede the administration of Federal income tax law (a desire that is evidenced on the purported return). Sec. 6702(a)(2).

With regard to the first element of the frivolous-return penalty, Lindberg's Form 1040, U.S. Individual Income Tax Return,

---

[16](...continued)

> (2) the conduct referred to in paragraph (1) is due to--
>
> > (A) a position which is frivolous, or
> >
> > (B) a desire (which appears on the purported return) to delay or impede the administration of Federal income tax laws,
>
> then such individual shall pay a penalty of $500.

For submissions to the IRS before Mar. 15, 2007, as in this case, the amendments to section 6702(a) effected by the Tax Relief and Health Care Act of 2006, Pub. L. 109-432, sec. 407(a), 120 Stat. 2960, are not applicable. Id., sec. 407(f), 120 Stat. 2962.

[17]Only the IRS may assess tax liability under the Code, see sec. 6201(a), but the term "self-assessment" is nevertheless used in sec. 6702 to describe a taxpayer's self-reporting of his tax liability on a return.

purported to be an income tax return for 2004. It reported a small amount of interest income. It stated the amount of Federal income tax withheld (even though the reported amount was incorrect). Lindberg attached Form 4852 to his Form 1040. Thus, the first element of the penalty is met.

The second element of the frivolous-return penalty is also satisfied. A return showing that the taxpayer earned zero in gross income and also reporting that substantial tax was withheld does not contain information on which the substantial correctness of the self-assessment can be judged. See Cabirac v. Commissioner, 120 T.C. 163, 169 (2003) ("it is now well established that tax forms that do not contain financial information upon which a taxpayer's tax liability can be determined do not constitute returns within the meaning of the Internal Revenue Code." (quoting United States v. Edelson, 604 F.2d 232, 234 (3d Cir. 1979))); Granger v. Commissioner, T.C. Memo. 2009-258 ("'The majority of courts, including this Court, have held that, generally, a return that contains only zeros is not a valid return'" (quoting Cabirac v. Commissioner, supra, at 169)); Schultz v. United States, 95 AFTR 2d 2005-1977, 2005-1 USTC par. 50,325 (W.D. Mich. 2005) (return deemed substantially incorrect because income tax withholding was internally inconsistent with zero income-tax amounts reported); Gregory v. United States, 91 AFTR 2d 2003-871, 2003-1 USTC par. 50,256 (N.D.

Ga. 2003). Lindberg's reporting of a mere $7 of interest does not render his return substantially correct. See United States v. Farber, 630 F.2d 569, 571 n.2 (8th Cir. 1980) (only $95 of taxable income reported); Rice v. Commissioner, supra (only $17 of taxable income reported).

Regarding the third element of the frivolous-return penalty, the IRS contends that the defects in Lindberg's return were due to a frivolous position. See sec. 6702(a)(2). We need only concern ourselves with the IRS's argument that the return was based on a frivolous position, see sec. 6702(a)(2)(A), because it did not argue that the return was intended to delay or impede the administration of tax laws, see sec. 6702(a)(2)(B).

The burden of demonstrating at the summary judgment stage that no material dispute of fact exists rests with the moving party, here the IRS. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970) ("the moving party * * * [has] the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party"); Brosi v. Commissioner, 120 T.C. 5, 7 (2003); Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985); Jacklin v. Commissioner, 79 T.C. 340, 344 (1982). But Rule 121(d) requires that a party adverse to a summary judgment motion "may not rest upon the mere allegations or denials of such party's pleading, but such party's response, by affidavits or as

otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial."

We consider why Lindberg's return was filed the way it was. One possibility was that Lindberg had no legitimate reason for filing his return that way. On its face, the return is consistent with this possibility. The return reported zero in wages even though we know from the summary-judgment record that Lindberg earned wages during the 2004 tax year. Although there might be reasons why a taxpayer who received wages might nonetheless in good faith report zero in wages, none of these reasons is consistent with the summary-judgment record in this case.

For example, consider the possibility that Lindberg's return reflected his position that he was an independent contractor rather than an employee. Lindberg's Form 4852 said that his employer's Form W-2 was incorrect because it did not correctly apply the definition of wages. An independent contractor might make the same statement. Payments to an independent contractor are not wages, and therefore such payments should not be reported on a Form W-2. Lindberg's return is not consistent with a good-faith belief that he was as an independent contractor. An independent contractor's fees are income. See sec. 61(a)(1) (compensation for services). But Lindberg's return said that he had zero income. Furthermore, even if Lindberg's reporting of

income were consistent with that of an independent contractor, he established no facts indicating that he is an independent contractor.  The IRS presented evidence that he was an employee of Accraply.  Lindberg failed to rebut this evidence.  See Rule 121(d).

We need not consider any further possible legitimate reasons for Lindberg's reporting.  We can end our inquiry here for two reasons.  First, Lindberg failed to give a legitimate explanation for his tax return in his objection to the IRS's motion for summary judgment.  He merely denied that his return was frivolous without providing any relevant support for his statement (the Chief Counsel memoranda that he cited were irrelevant).  Second, Lindberg has a history of propounding frivolous theories.  He sent a letter to the IRS in which he purported to subject the IRS to a nonsensical "International Commercial Claim Administrative Remedy".  Then Lindberg attempted to pay his 2004 tax liability by issuing a "Private Offset Bond" to the IRS.  The peculiar language of the "bond" asserted that it had a face value of $50 million and demanded that Secretary of the Treasury Henry Paulson wipe out Lindberg's debt to the Federal Government "by end of business on the day of presentment."

The third element of the penalty is also met.  We hold that the IRS correctly assessed the section 6702 penalty.

For the sake of completeness, we shall address Lindberg's remaining arguments.  First, Lindberg did not have a right to a face-to-face hearing under the relevant Code sections and regulations.  Lindberg failed to (1) identify nonfrivolous issues to be discussed, (2) provide financial statements, and (3) file past-due returns.  The regulations state that "A CDP hearing may, but is not required to, consist of a face-to-face meeting, one or more written or oral communications between an Appeals officer or employee and the taxpayer or the taxpayer's representative, or some combination thereof."  Sec. 301.6330-1(d)(2), Q&A-D6, Proced. & Admin. Regs.  The regulations further explain that "a taxpayer who presents in the CDP hearing request relevant, non-frivolous reasons for disagreement with the proposed levy will ordinarily be offered an opportunity for a face-to-face conference at the Appeals office closest to taxpayer's residence."  Sec. 301.6330-1(d)(2), Q&A-D7, Proced. & Admin. Regs.  The regulations also explain that a face-to-face hearing "will not be granted if the request for a hearing or other taxpayer communication indicates that the taxpayer wishes only to raise irrelevant or frivolous issues".  Sec. 301.6330-1(d)(2), Q&A-D8, Proced. & Admin. Regs.; see also Lunsford v. Commissioner, 117 T.C. 183, 189 (2001); Oropeza v. Commissioner, T.C. Memo. 2009-244; Ho v. Commissioner, T.C. Memo. 2006-41. Finally, a face-to-face hearing to consider a collection

alternative, such as an installment agreement or an offer-in-compromise, will not be granted unless the taxpayer has filed past-due returns and submitted financial statements. See Giamelli v. Commissioner, 129 T.C. 107, 111-112 (2007); Nelson v. Commissioner, T.C. Memo. 2009-108; Keenan v. Commissioner, T.C. Memo. 2006-260, affd. 308 Fed. Appx. 91 (9th Cir. 2009); Rodriquez v. Commissioner, T.C. Memo. 2003-153; sec. 301.6330-1(d)(2), Q&A-D8, (e)(1), Proced. & Admin. Regs.[18]

Lindberg's initial request for a hearing consisted solely of (1) frivolous arguments and (2) requests to discuss collection alternatives for which he did not qualify because he did not file past-due tax returns or submit financial statements. The Appeals officer in Fresno offered Lindberg an opportunity for a face-to-face hearing, provided that Lindberg could identify nonfrivolous arguments against the proposed levy by November 9, 2007, but Lindberg did not identify any nonfrivolous arguments in subsequent correspondence other than to repeat his request to discuss collection alternatives. The Appeals officer in St. Paul then offered Lindberg a face-to-face hearing if he would take steps to qualify for consideration of collection alternatives by submitting his financial statements and file all past-due

---

[18]The requirement that the taxpayer file past-due returns is repeated in the Internal Revenue Manual (IRM). 1 Administration, IRM (CCH), pt. 5.8.3.13(1), at 16,313-16,314 (Sept. 23, 2008); 2 Administration, IRM (CCH), pt. 5.14.1.2(8)(f), at 17,505 (Sept. 26, 2008).

returns.  Lindberg refused to submit financial statements and file his tax returns.  There is no abuse of discretion in the IRS's refusal to provide a face-to-face hearing when the taxpayer refuses to present nonfrivolous arguments, file past-due returns, and submit financial statements.  See Rice v. Commissioner, T.C. Memo. 2009-169; Moline v. Commissioner, T.C. Memo. 2009-110, affd. 105 AFTR 2d 2010-843, 2010-1 USTC par. 50,204 (10th Cir. 2010); Summers v. Commissioner, T.C. Memo. 2006-219.

Second, the Appeals officer verified that the IRS had complied with all legal and administrative procedural requirements pertaining to the proposed levy.  See sec. 6330(c)(3)(A).  In questioning this conclusion, Lindberg implies in his objection that the transcript of account furnished to him is insufficient to show that the Appeals officer verified that the IRS complied with all legal and procedural requirements, and that he had a right at his hearing to obtain additional documents related to his case to perform the verification himself.  He also argues that the Appeals officer denied him his right to examine a record of the assessment and a copy of an IRS supervisor's approval of the penalty determination.  As legal support for this latter proposition, he cites section 6203, which requires the IRS to furnish a taxpayer with a record of assessment, and section 6751, which requires the supervisor of the official determining

certain penalties to approve the initial determination in writing.

Lindberg is incorrect on each point. Regarding Lindberg's section 6203 argument, this Court has held that the transcript of account of the kind sent to Lindberg satisfies the requirements of section 6203. See <u>Wagner v. Commissioner</u>, T.C. Memo. 2002-180; <u>Weishan v. Commissioner</u>, T.C. Memo. 2002-88; <u>Lindsey v. Commissioner</u>, T.C. Memo. 2002-87. Thus, he received a record of assessment.

Regarding Lindberg's section 6751 argument, section 6751 by its terms does not require supervisory approval of penalties "automatically calculated through electronic means."[19]  Sec.

_____

[19]Sec. 6751 provides:

SEC. 6751. PROCEDURAL REQUIREMENTS.

(a) Computation of Penalty Included in Notice.-- The Secretary shall include with each notice of penalty under this title information with respect to the name of the penalty, the section of this title under which the penalty is imposed, and a computation of the penalty.

(b) Approval of Assessment.--

(1) In general.--No penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate.

(2) Exceptions.--Paragraph (1) shall not apply to--

(continued...)

6751(b)(2)(B).  The section 6702 frivolous-return penalty is such a penalty, and thus the approval of a supervisor was not required.  See <u>Borchardt v. Commissioner</u>, 338 F. Supp. 2d 1040, 1044 (D. Minn. 2004); <u>Cole v. United States</u>, 90 AFTR 2d 2002-6987, 2002-2 USTC par. 50,804 (W.D. Mich. 2002).

An Appeals officer may rely on the transcript of account to satisfy the verification requirement of section 6330(c)(1) unless the taxpayer alleges that a specific irregularity transpired during the assessment process or the taxpayer provides evidence of such an irregularity.  <u>Roberts v. Commissioner</u>, 118 T.C. 365, 371-372 n.10 (2002) (it is "not an abuse of discretion for the Appeals officer to have relied on certain computer-generated transcripts for purposes of complying with sec. 6330(c)(1). * * * Sec. 6330(c)(1) does not require the Commissioner to rely on a particular document to satisfy the verification requirement imposed by that section."), affd. 329 F.3d 1224 (11th Cir. 2003). Aside from Lindberg's two meritless arguments based on sections 6203 and 6751 discussed above, he did not specify any

[19](...continued)

        (A) any addition to tax under section 6651, 6654, or 6655; or

        (B) any other penalty automatically calculated through electronic means.

    (c) Penalties.--For purposes of this section, the term "penalty" includes any addition to tax or any additional amount.

irregularity in the assessment procedure that would raise a question about the validity of the assessments or the information in the transcript of account sent to him.  See Lunsford v. Commissioner, supra at 188; Pomerantz v. Commissioner, T.C. Memo. 2005-295; Kubon v. Commissioner, T.C. Memo. 2005-71; Schroeder v. Commissioner, T.C. Memo. 2002-190.  Thus, we conclude that the Appeals officer properly verified IRS compliance with applicable law.

The Appeals officer did not abuse his discretion in refusing to produce all of the documents Lindberg requested for the hearing.  The IRS is correct that a taxpayer has no right to subpoena documents and conduct general discovery during an informal proceeding such as a CDP hearing.  See Davis v. Commissioner, 115 T.C. at 41-42; Watson v. Commissioner, T.C. Memo. 2001-213; Wylie v. Commissioner, T.C. Memo. 2001-65.[20]

---

[20]Sec. 6330(c)(1) by its terms does not even require the Appeals officer to provide the taxpayer with a copy of a document verifying that the requirements of any applicable law or administrative procedure have been met.  Nestor v. Commissioner, 118 T.C. 162, 166 (2002); Davis v. Commissioner, T.C. Memo. 2007-160; Scott v. Commissioner, T.C. Memo. 2007-91, affd. 262 Fed. Appx. 597 (5th Cir. 2008).  Sec. 6330(c)(1) and sec. 301.6330-1(e)(3), Q&A-E8, Proced. & Admin. Regs., require that the Appeals officer perform the verification and memorialize it in the notice of determination.  While the taxpayer has no right at the CDP hearing to a copy of a document stating that the Appeals officer has performed the verification, this Court may require that such a document (and any underlying relevant documents the Appeals officer examined while performing the verification) be produced during the process of judicial review.

Finally, the Appeals officer found that the proposed collection action balanced "the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary."  Sec. 6330(c)(3)(C).  Lindberg challenged the appropriateness of the intended method of collection (a levy) by stating in his request for a hearing that it "does not balance with the needs for the Service to collect the tax and, considering the circumstances, it is an intrusive action and more intrusive than necessary".  As he did not raise this argument before this Court, we deem him to have waived it.  See 3K Inv. Partners v. Commissioner, 133 T.C. __, __ n.9 (2009) (slip op. at 15-16); Bemidji Distrib. Co. v. Commissioner, T.C. Memo. 2001-260, affd. sub. nom. Langdon v. Commissioner, 59 Fed. Appx. 168 (8th Cir. 2003); Hesse v. Commissioner, T.C. Memo. 1989-515.

Lindberg did not offer a specific collection alternative to be considered by the Appeals officer, nor did he raise any other appropriate defenses to collection.  See sec. 6330(c)(3)(B).

As the Appeals officer was correct in his findings and actions regarding all substantive and procedural issues, he did not abuse his discretion in making the determination in the notice.  Accordingly, we will grant summary judgment to the IRS on the issue of Lindberg's liability for the section 6702 frivolous return penalty for the tax year 2004.

## II.  Section 6673 Sanctions

Section 6673(a)(1) authorizes this Court to require a taxpayer to pay to the United States a penalty not to exceed $25,000 if the taxpayer took frivolous or groundless positions in the Tax Court proceedings or instituted the proceedings primarily for delay.  A position maintained by the taxpayer is frivolous where it is "contrary to established law and unsupported by a reasoned, colorable argument for change in the law."  Coleman v. Commissioner, 791 F.2d 68, 71 (7th Cir. 1986).  In Pierson v. Commissioner, 115 T.C. 576, 581 (2000), we warned that a penalty under section 6673(a) could be imposed on those taxpayers who abuse the protections afforded by sections 6320 and 6330 by instituting or maintaining actions under those sections primarily for delay or by taking frivolous or groundless positions in actions under these sections.

We believe that Lindberg advanced frivolous and/or groundless contentions, arguments, statements, and requests primarily for delay, thereby causing this Court to waste its limited resources.  See Schmith v. Commissioner, T.C. Memo. 2002-252.  We will require Lindberg pursuant to section 6673(a)(1) to pay to the United States a penalty of $1,000.  We admonish Lindberg that the Court will consider imposing a higher penalty

should he return to the Court in the future with frivolous arguments.[21]

In reaching our holding, we have considered all arguments made, and to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order and</u>

<u>decision will be entered</u>.

---

[21]Lindberg petitioned this Court to redetermine deficiencies and various penalties, including fraudulent failure-to-file penalties, for the tax years 2001, 2002, 2004, 2005, and 2006. <u>Lindberg v. Commissioner</u>, docket No. 31188-08. He filed a motion to dismiss his case and the Court entered a decision in favor of the IRS. Lindberg also petitioned this Court to redetermine a deficiency and various penalties for the tax year 2007. <u>Lindberg v. Commissioner</u>, docket No. 11499-09. The Court entered a stipulated decision on March 3, 2010, in which Lindberg conceded liability for all amounts at issue.