T.C. Memo. 2011-12

UNITED STATES TAX COURT

ANTHONY ATKINS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18529-08L.          Filed January 18, 2011.

Anthony Atkins, pro se.

<u>Mayer Y. Silber</u> and <u>Brett A. Saltzman</u>, for respondent.

MEMORANDUM FINDINGS OF FACTS AND OPINION

MORRISON, <u>Judge</u>:  Petitioner Anthony Atkins appeals two determinations of the IRS Office of Appeals:  first, a determination sustaining the filing of a lien to collect the frivolous-return penalty for 2000, and income tax liabilities for 1998, 1999, 2001, and 2002; second, a determination sustaining a proposed levy to collect the frivolous-return penalty for 2000.

Atkins seeks a remand to the Appeals Office for it to conduct a hearing to consider collection alternatives.  We sustain the determinations of the Appeals Office.

FINDINGS OF FACT

The parties agreed to a stipulation of facts, which the Court hereby incorporates into its findings of fact.  The respondent will be referred to here as the IRS.

Atkins failed to file federal income tax returns for the years 1998, 1999, 2001, and 2002.  The IRS issued notices of deficiency for these four years.  Atkins did not file a Tax Court petition in response to these notices of deficiency.

On December 21, 2004, the IRS filed a lien with the Recorder of Deeds of DuPage County, Illinois, with respect to Atkins' federal income tax liability for 2000.

The IRS assessed tax liabilities based on the notices of deficiency for years 1998, 1999, 2001, and 2002.  The assessments were made on May 9, 2005 (for 1998, 1999, and 2002), and on July 11, 2005 (for 2001).

On October 19, 2005, the IRS issued a notice of intent to levy to collect the income tax liabilities for 1998, 1999, 2001, and 2002.  Section 6330(a)(3)(B)[1] provides that a person receiving such a notice may request a hearing within 30 days

---

[1]All section references are to the Internal Revenue Code of 1986, as amended.

after the notice was sent.  The IRS claims that Atkins failed to request such a hearing within 30 days.

At some point, Atkins submitted to the IRS a Form 1040, U.S. Individual Income Tax Return, for the year 2000 which the IRS considered a frivolous return.  The IRS assessed a frivolous-return penalty for 2000 on March 6, 2006.[2]  On October 18, 2006, the IRS mailed to Atkins a notice of intent to levy to collect the frivolous-return penalty for 2000.[3]

On November 11, 2006, Atkins sent to the IRS a request for a hearing to challenge a notice of intent to levy and a notice of filing of lien.  The request listed the type of tax as "1040" (i.e. income tax) and the tax periods as 1998, 1999, 2000, 2001, 2002, and 2003.[4]  The IRS concedes that this request was a timely

---

[2]Both parties agree that this was the date of this assessment.

[3]The parties stipulated that on Oct. 18, 2006, the IRS mailed to Atkins a notice of intent to levy.  However, the parties did not stipulate the type of tax or the tax period to which the notice corresponded.  Although the parties stipulated that Exhibit 3-J is a copy of the notice, Exhibit 3-J does not indicate the type of tax or the tax periods for which the levy was intended.  The IRS states on brief that the notice of intent to levy was to collect the frivolous-return penalty for 2000. Atkins agrees with this statement in his brief.  Also, the determination sustaining the levy stated that the notice of intent to levy to collect the frivolous-return penalty for 2000 was dated Oct. 18, 2006.  We conclude that the Oct. 18, 2006, notice was a notice of intent to levy to collect the frivolous-return penalty for 2000.

[4]It is unclear why the request referred to tax year 2003. The record does not reveal when, or if, a notice of intent

(continued...)

response to the October 18, 2006, notice of intent to levy to collect the frivolous-return penalty for 2000. The IRS does not concede that the request was a timely response to any other notice.

On December 7, 2006, the IRS mailed a notice to Atkins that it had filed a lien to collect Atkins' income tax liabilities for 1998, 1999, 2001, and 2002 and to collect the frivolous-return penalty for 2000.

The following table lists the notices of intent to levy and notices of filing of lien that the IRS issued to Atkins:

|  | 2000 | 1998 | 1999 | 2001 | 2002 | 2000 (penalty) |
|---|---|---|---|---|---|---|
| Notice of intent to levy | Unknown | 10/19/05 | 10/19/05 | 10/19/05 | 10/19/05 | 10/18/06 |
| Notice of filing of lien | Unknown, but lien filed 12/21/04 | 12/7/06 | 12/7/06 | 12/7/06 | 12/7/06 | 12/7/06 |

On January 2, 2007, Atkins sent a request contesting the filing of a lien. The request stated that the type of tax was "1040" (i.e. income tax) and "6702" (the frivolous-return penalty) and that the tax periods were 1998, 1999, and 2000. The parties stipulated that the request explained Atkins'

---

[4](...continued)
to levy was issued with respect to 2003. A lien was filed to collect 2003 income tax liabilities on Oct. 3, 2008, but that was almost two years after the request for a hearing.

disagreement with the filing of lien of which he was notified on December 7, 2006; i.e. the filing of lien to collect income tax liabilities for 1998, 1999, 2001, and 2002 and to collect the frivolous-return penalty for 2000. The IRS concedes that this hearing request was timely. Atkins' requests for hearings were assigned to Settlement Officer Marilyn Dismukes.

On March 25, 2008, Officer Dismukes sent a letter to Atkins indicating that the Appeals Office had received a request for a hearing regarding a levy and a lien. The letter made two statements regarding the timeliness of the request for a hearing. The letter said that (1) the request was timely with respect to the levy to collect the 2000 frivolous-return penalty, and (2) the request for a hearing was untimely to the extent it requested a lien hearing with respect to the 2000 frivolous-return penalty.[5] The letter scheduled a "face to face conference call" with Atkins on April 25, 2008, at 9 a.m. With respect to the lien filed to collect the 2000 frivolous-return penalty, the letter offered only an "equivalent" hearing. The letter

---

[5]With respect to statement (1), the letter correctly reflected that Atkins' request for a hearing to contest the levy to collect the 2000 frivolous-return penalty was timely. The notice of this proposed levy was sent on Oct. 18, 2006. Atkins requested a hearing on Nov. 11, 2006. With respect to statement (2), the letter incorrectly claimed that Atkins' request for a hearing to contest the filing of a lien to collect the 2000 frivolous-return penalty was untimely. The IRS sent the notice of the lien filing on Dec. 7, 2006. Atkins sent a timely request for a hearing on Jan. 2, 2006.

indicated that for the Appeals Office to consider collection alternatives, Atkins needed to submit a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and file all federal tax returns. The letter indicated that Atkins had not filed an income tax return for 2006.

Also on March 25, 2008, Officer Dismukes sent a letter to Atkins acknowledging that the Appeals Office had received Atkins' request for a hearing regarding a levy. The letter advised that the hearing request was untimely because it was not postmarked within 30 days of the notice of intent to levy to collect Form 1040 tax liabilities for 1998, 1999, 2000, 2001, and 2002. This appears to be inaccurate. If one considers--as the IRS does now--Atkins to have requested a hearing to contest the filing of a lien to collect the frivolous-return penalty for 2000 and to collect income tax liabilities for 1998, 1999, 2001, and 2002, then the letter from Officer Dismukes acknowledging this request erred in three respects. First, it erroneously characterized the request as relating to a levy rather than a lien. Second, it erroneously characterized the request as relating to the year 2000. Third, it claimed that the request was untimely when, in fact, the request was made on January 2, 2007, which was within

30 days of the December 7, 2006, notice of filing of lien.[6]  The
letter stated that the IRS would offer Atkins an equivalent
hearing.  The letter stated that a "face-to-face conference call"
was scheduled for 9 a.m. on April 25, 2008.  The letter indicated
that for alternative collection methods to be considered, Atkins
needed to file all federal tax returns[7] and submit a Form 433-A.

On April 24, 2008, Officer Dismukes spoke with Atkins by
telephone and informed him that their conference on April 25,
2008, would not be face-to-face because Atkins was not current
with his federal income tax filings.  Atkins told Officer
Dismukes that he was unaware that the conference was scheduled
for that date, that he would not be available at the scheduled
time, and that he wanted a face-to-face conference.  Officer
Dismukes agreed to reschedule the conference, but only if Atkins
filed his federal income tax returns for 2006 and 2007 within 14

---

[6]The IRS makes the following characterization of the two
acknowledgment letters in its brief:

(continued...)

> [6](...continued)
> On March 25, 2008, SO Dismukes sent letters to
> petitioner's home address confirming the receipt and
> timeliness of his CDP hearing requests, and scheduling
> a face-to-face conference call with the petitioner for
> April 25, 2008 at 9:00 a.m. * * *.

But the letter we are discussing did not "[confirm]" the
"timeliness" of Atkins' hearing request.  It denied the
timeliness of the request.

[7]Unlike the prior letter, this letter did not note that
Atkins had failed to file his 2006 tax return.

days.  On April 25, 2008, Atkins apparently did not participate in any conference with Officer Dismukes.

On May 13, 2008, Atkins sent Officer Dismukes a letter.  The letter was in reply to an April 25, 2008, letter from Officer Dismukes that is not in the record.  In his letter Atkins stated that he wanted to schedule a face-to-face meeting and that he would need several weeks in order to make arrangements to meet.  He also stated that Congress did not require him to provide Officer Dismukes with a completed Form 433-A before the hearing.[8]

On June 25, 2008, the Appeals Office issued a determination sustaining the proposed levy to collect the frivolous-return penalty for 2000.  The determination stated that the date of the notice of levy was October 18, 2006, and that the date of the request for the hearing was November 11, 2006.

On June 25, 2008, the Appeals Office issued a second determination.  The determination sustained the filing of a lien to collect a frivolous-return penalty for 2000 and income tax liabilities for 1998, 1999, 2001, and 2002.[9]  The determination

---

[8]In its brief the IRS claims that Atkins stated in his letter "that he would not file his returns within the 14 day period."  The letter makes no such statement.

[9]The determination also purported to address the filing of a lien to collect Atkins's year 2000 income tax liability, but the reference to the year 2000 was a mistake.  As noted previously, the IRS had filed a lien to collect Atkins' year 2000 income tax liability in December 2004.  There is no other reference in the record to a lien filing for 2000 income tax under sec. 6323, or to a notice of such a lien filing under sec. 6320(a)(1).  The

stated that the date of the notice of filing of lien was December 7, 2006, and that the date of the request for the hearing was January 5, 2007.  The IRS now concedes in its brief that the date of the request was January 2, 2007, not January 5, 2007.

In his petition Atkins challenged the two determinations of June 25, 2008.  At the time he filed the petition, Atkins was a resident of Illinois.  The case was tried in Chicago, Illinois.

OPINION

1.  Background Principles

Before the IRS can collect tax from a taxpayer through a levy or a lien filing, it must first assess the tax.[10]  If the taxpayer refuses to pay the assessment, the IRS can then seize the property of the taxpayer through its power of levy.[11]  Before

---

case will be dismissed for lack of jurisdiction to the extent that the case places at issue any determination of the IRS under sec. 6320 regarding the filing of a lien with respect to the
(continued...)

[9](...continued)
liability of Atkins for income taxes for the year 2000.  So much of the pleadings will be stricken as relate to any determination of the IRS under sec. 6320 regarding the filing of a lien with respect to the liability of Atkins for income taxes for the year 2000.

[10]"The tax assessment is a predicate to collection of the tax; tax collection follows assessment."  Elliott, Federal Tax Collections, Liens, and Levies, par. 2.01[1], at 2-4 (2d ed. 2008).

[11]"The levy enables the Service to gain custody of taxpayer's property whether in the possession of the taxpayer or third parties."  Elliott, supra at par. 13.01, at 13-6 (2d ed. 2008).  "The * * * levy does not determine whether the government's rights to the seized property are superior to those

the IRS can levy on property, it must first offer the taxpayer a section 6330 hearing.

Levy is not the only means of collecting unpaid tax. The assessment by the IRS automatically creates a government property interest, called a lien, in all property owned by the taxpayer and even in property later acquired by the taxpayer. Sec. 6321. The tax lien is not effective against four important classes of third parties until the IRS files a notice of lien with the appropriate state or local government in which the property is located. Sec. 6323(a), (f). The IRS is required to notify the taxpayer within 5 business days after it files a notice of lien. Sec. 6320(a)(1) and (2). Within 30 days after the expiration of the 5-business-day period for sending the notification, the taxpayer is permitted under section 6320(a)(3)(B) to request a hearing with the IRS Appeals Office.

Hearings concerning IRS levies are provided for in section 6330, and hearings concerning the filing of a notice of tax lien are provided for in section 6320. The rules that govern the scope of a lien hearing are borrowed from the statutory provisions that govern a levy hearing. Sec. 6320(c).[12] Section

---

of other claimants; the levy does, however, protect the government against diversion or loss while such claims are being resolved." Id.

[12]Sec. 6320(c) provides that "For purposes of this section, subsections (c), (d) (other than paragraph (2)(B) thereof), and (e) of section 6330 shall apply."

6330(c)(2) sets forth what issues can be raised by the taxpayer at a levy hearing, and, by operation of section 6320(c), it also governs what issues can be raised by the taxpayer at a lien hearing.  Section 6330(c)(2) provides:

> (2)  Issues at hearing.--
>
>> (A)  In general.--The person may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy, including--
>>
>>> (i) appropriate spousal defenses;
>>>
>>> (ii) challenges to the appropriateness of collection actions; and
>>>
>>> (iii) offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise.
>>
>> (B)  Underlying liability.--The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

The duties of the hearing officer in a levy hearing (and therefore also a lien hearing) are set forth in section 6330(c)(3).  That provision requires the hearing officer to make a "determination", and in making the determination the hearing officer must "take into consideration * * * the issues raised under [section 6330(c)(2)]".

Once the hearing officer has made the determination described above, a taxpayer can petition the Tax Court for review

of the determination.  Sec. 6330(d)(1).  Where the existence or amount of the underlying tax liability is properly at issue, the Court will review the determination de novo.  In cases involving taxpayers who do not dispute the existence or amount of their underlying tax liability (or who are not permitted to do so because they had a prior opportunity to dispute it), the Court will review the determination of the Appeals officer for abuse of discretion.  Lunsford v. Commissioner, 117 T.C. 183, 185 (2001); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  The latter inquiry hinges on whether the IRS's application of its discretion was "arbitrary, capricious, or without sound basis in fact or law."  Giamelli v. Commissioner, 129 T.C. 107, 111 (2007); Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

2.   Positions of the Parties

As far as we can tell, Atkins' brief contains only one contention.  He argues that the Appeals Office failed to hold a face-to-face meeting with him.  The rest of the brief is either redundant or irrelevant.  In his reply brief Atkins expands his original contention slightly.  He claims he did not receive any type of hearing, face-to-face or otherwise.  At trial he explained that the remedy he seeks is a remand for a hearing to consider collection alternatives.

The IRS argues that a hearing consists of all forms of communication between the taxpayer and the Appeals Office from

the time the taxpayer requests a hearing to the issuance of a notice of determination concerning the hearing; that Atkins communicated with Officer Dismukes by telephone or by mail on several occasions; that this string of communications constituted a hearing; that Officer Dismukes adjourned the hearing because Atkins refused to file tax returns and submit a Form 433-A; that Atkins was not entitled to a face-to-face hearing because he was ineligible for collection alternatives on account of his failure to file tax returns and submit financial information; that Atkins could not contest the income tax liabilities because he received statutory notices of deficiency for 1998, 1999, 2001, and 2002; that even if Atkins had not received the notices of deficiency for 1998, 1999, 2001, and 2002, Atkins could have contested his income tax liabilities for those years by requesting a pre-levy hearing in response to the October 19, 2005, notice; that Atkins is liable for the frivolous-return penalty; that he could have contested his liability for the frivolous-return penalty before it was assessed; and that he failed to raise the issue of his liability for the frivolous-return penalty at the Appeals Office or at trial.

3.  Discussion

To rectify the alleged failure of the Appeals Office to hold a hearing, Atkins seeks a remand for the Appeals Office to hold a hearing with respect to collection alternatives.  He does not

seek a remand for a hearing to contest his underlying tax liabilities.  Thus, we need not consider whether the Appeals Office denied Atkins a hearing on his underlying tax liabilities.

We find that the Appeals Office had a hearing with Atkins to consider collection alternatives.  The record demonstrates that Officer Dismukes communicated to Atkins that he needed to file tax returns to be considered for collection alternatives.  This communication took place during the telephone conversation of April 24, 2008.  After this conversation, Atkins did not file his returns.  Instead, he sent Officer Dismukes a letter on May 12, 2008, stating that he would not file a Form 433-A.  We surmise from this that Officer Dismukes had already communicated to Atkins the requirement that Atkins file a Form 433-A.  The filing of tax returns and the submission of a Form 433-A are prerequisites to the Appeals Office's considering collection alternatives.[13]  The communications between Atkins and Officer Dismukes were sufficient to establish that Atkins did not qualify for collection alternatives.  Therefore, these communications constitute a hearing to discuss collection alternatives.[14]

_____

[13]It is not an abuse of discretion for the Appeals Office to require tax returns and financial information.  Giamelli v. Commissioner, 129 T.C. 107, 111-112 (2007).

[14]Letters between the taxpayer and the Appeals Office can form part of the hearing.  Katz v. Commissioner, 115 T.C. 329, 337-338 (2000).

As noted earlier, the two letters in which Officer Dismukes offered Atkins a hearing contained mistakes in describing the requests by Atkins for a hearing.  Atkins does not now claim he was prejudiced by these mistakes.  Therefore, we do not consider these mistakes in determining whether the Appeals Office erred.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.