T.C. Memo. 2012-337

UNITED STATES TAX COURT

LEE ROY SULLIVAN, JR., Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6379-12L.                    Filed December 4, 2012.

      P owed Federal income tax liabilities for tax years 2004, 2005, and 2006. R issued to P a notice of proposed levy to collect those unpaid liabilities. P requested a collection due process hearing before IRS Appeals pursuant to I.R.C. sec. 6330, and expressed a desire for a collection alternative--an installment agreement, an offer-in-compromise, or currently-not-collectible status--but he did not provide to Appeals the financial information that it requested. Appeals determined that the levy notice was proper and that collection should proceed. P filed a timely petition for review of that determination with this Court, and R moved for summary judgment.

      <u>Held</u>: IRS Appeals did not abuse its discretion, and R's motion for summary judgment will be granted.

**[*2]**   Lee Roy Sullivan, Jr., for himself.

Steven M. Webster, for respondent.


MEMORANDUM OPINION


GUSTAFSON, Judge:  This is a collection due process ("CDP") appeal pursuant to section 6330(d),[1] in which petitioner Lee Roy Sullivan, Jr., asks this Court to review the determination by the Office of Appeals ("Appeals") of the Internal Revenue Service ("IRS") to proceed with a levy to collect his unpaid Federal income tax for tax years 2004, 2005, and 2006.  The issue is whether Appeals abused its discretion in making that determination.  Respondent, the Commissioner of the IRS, moved for summary judgment pursuant to Rule 121, and Mr. Sullivan filed an opposition.  We hold that there is no genuine dispute as to material fact on the issue of whether Appeals abused its discretion in determining to proceed with the proposed levy.  We will therefore grant the Commissioner's motion.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986 as in effect at all relevant times (codified in 26 U.S.C. and referred to herein as "the Code"), and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3]                                Background

The Commissioner's motion establishes the following facts, which Mr. Sullivan did not dispute.

Mr. Sullivan's CDP Request

Mr. Sullivan's tax liabilities for the years 2004, 2005, and 2006 were redetermined in three consolidated deficiency cases before this Court, Sullivan v. Commissioner, T.C. Memo. 2010-138, in which final decisions were entered in August 2010.  The deficiencies were assessed in November 2010.  When Mr. Sullivan did not pay after notice and demand, the IRS issued a notice of intent to levy in August 2011.  Mr. Sullivan timely submitted a Form 12153, "Request for a Collection Due Process or Equivalent Hearing", in September 2011.

On Mr. Sullivan's Form 12153, he checked boxes indicating that he was requesting both an installment agreement and an offer-in-compromise.  In the space for the "Reason" for his request, he wrote "See Attached", and to the Form 12153 he attached four pages[2] that consisted of 16 numbered paragraphs and additional matter.  His attachment stated as follows:

---

[2]Mr. Sullivan's attachment presented selected and lightly edited paragraphs from among the 23 "boilerplate items" in the CDP request at issue in Thornberry v. Commissioner, 136 T.C. 356, 369 (2011).  See "Reply to Petitioners' Response to Motion to Dismiss for Lack of Jurisdiction", Exhibit A, Thornberry v. Commissioner, 136 T.C. 356 (2011) (docket No. 580-10L).

**[*4]**  1.  I hereby request collection alternatives including Offer in Compromise (OIC), payment schedule, CNC (Currently Not Collectible), hardship, etc.  I also request subordination discharge and withdrawal of any liens,[3] if appropriate pursuant to §IRC 6330(C)(2)(B).  I have relevant issues to raise.  I request relief under IRC §§ 6320/6330 from the proposed collection action.  I agree to provide the requested financial information and to obey all laws passed by the Congress pursuant to the Constitution, including tax laws.

2.  I hereby request a face-to-face hearing as I have raised relevant issues as listed herein.  I will bring with me appropriate forms.  I have relevant information to be considered for collection alternatives.  I hereby request a reconsideration of the deficiency if I have not previously had the opportunity to do so.[4]  I will furnish you with your completed forms and file what the law requires.

3.  Collection actions are inappropriate.  The administrative record is invalid and incomplete.  Procedural defects by Internal Revenue Service and irregularities may exist, such as issuing a levy to my bank before I have had a CDP Hearing.

4.  Collections would be intrusive and place an undue hardship on me.

5.  I also request proof of verification from the Secretary that all applicable law and administrative procedures have been met pursuant to IRC §§ 6320 and 6330.

---

[3]The collection notices at issue are notices of proposed <u>levy</u>, and the record does not show that any notices of <u>lien</u> were filed.

[4]In fact, Mr. Sullivan had an opportunity to challenge the deficiencies in his prior deficiency cases, and he now states that he does not dispute the liabilities.

**[*5]** 6. I have not neglected or refused to pay a tax liability.[5]

7. Please send me copies of the Form 17-A, the Summary Record of Assessment, Form 23-C or replacement form, the RACS Report and my form 4340, "Certificate of Assessment and Payments", etc. Pursuant to 26 CFR Part 301.6203-1, please send me a copy of the record of assessment with the pertinent parts of the assessment which set forth the name of the taxpayer, the date of assessment, the character of the liability assessed, the taxable period and the amount assessed. Please send me a copy of my entire administrative file including the Case Activity Record.

8. I hereby notify the Appeals Division of my intention to make an audio recording of the hearing pursuant to IRC § 7521, and will bring with me a court reporter, a representative and two witnesses. I hereby request that the appeals officer make arrangements for me to bring my tape recorder through the security check point at any conference.

9. I hereby withdraw any Constitutional, moral, political, religious or conscientious arguments that I have heretofore made, although I am not aware of any. Further, I also withdraw any legal positions which are classified and published by the IRS as "frivolous or groundless", if any. This includes any arguments that the courts have determined are frivolous or groundless, or published on the IRS website.

10. The proposed levy/lien actions are not appropriate based on the reasons to be presented at the hearing. The requirements of the applicable law or administrative procedures have not been met and the actions taken were not appropriate under the circumstances. The Revenue Officer has not followed all legal and procedural requirements making the proposed actions inappropriate under the circumstances.

---

[5]The record shows that the liabilities remained unpaid after notice and demand, and Mr. Sullivan does not now contend otherwise.

[*6]  11.  The proposed collection action or levy/lien action does not balance with the needs for the Service to collect the tax and, considering the circumstances, it is an intrusive action and more intrusive than necessary, by IRC §6330[c](3).

12.  Taxpayer has many reasons and justifications for an in-person conference.  These include tape recording, opportunity to present evidence, a chance to show my books and records and explain them at the same time, plus the effect of personal presentation.

13.  I have tried to explain my position as clearly as possible.  However if the appeals officer does not understand my position, needs more information or has any questions, he/she can contact me in writing. I can explain in more detail my exact position if I am informed where this additional information is needed.

14.  I hereby request a photocopy of the record of assessment with the requirements of 26 CFR part 301.6230-1, which states: "If the taxpayer requests a copy of the record of assessment, he shall be furnished a copy of the pertinent parts of the assessment which set forth the name of the taxpayer, the date of assessment, the character of the liability assessed, the taxable period and the amount assessed."

15.  I hereby request a verification of accuracy of the tax liability, as required in IRM part 5-collection process; Chapter 13; section2; #2.3 item 21:5.13.2.2.3 (03-26-1999).

16.  Verification of the Accuracy of the Tax Liability: CQMS Standard: Was the accuracy of the tax liability verified when required? Definition of the tax liability initiative: Was the accuracy of the tax liability verified when seizure action was taken if after July 22, 1998, or at anytime during the case when a taxpayer questioned the accuracy of the stated balance due or the underlying liability?  Examples might include possible unposted payments, taxes discharged in bankruptcy, substitute for return / IRC § 6020(b) assessment, audit reconsideration, non-master file case, trust fund recovery penalty, "innocent spouse" situation, other penalties and interest.

**[*7]**       To meet this CQMS standard, on all seizures occurring after July 22, 1998, the Revenue Officer must document in the case history that the accuracy of the tax liability has been verified.  Further, <u>anytime during the investigation,</u> when a taxpayer questions the accuracy of the balance due or underlying tax liability, the file should reflect that appropriate research was conducted in relation to information presented by the taxpayer in support of his or her query.  Verification of liability must be documented even when it appears that the taxpayer is questioning the liability simply to delay.

If the research concludes that the recorded liability was accurate, was an explanation provided to the taxpayer? If the liability was determined to be in error, was action initiated to adjust the liability to the proper amount owed?

I request proof of accuracy of the tax liability and the documentation of the research of said proof.

I request documentation of the case history that the accuracy of the tax liability has been verified.

<u>The agency-level CDP hearing</u>

By letter of October 17, 2011, Settlement Officer Patty Jensen of the IRS

Office of Appeals informed Mr. Sullivan:

I have scheduled a telephone conference call for you **on November 10, 2011 at 11 am EST**.  Please call me at the date and time indicated above. This call will be your primary opportunity to discuss with me the reasons you disagree with the collection action and/or to discuss alternatives to the collection action.  If this time is not convenient for you, or you would prefer your conference to be held by correspondence, please let me know within fourteen (14) days from the date of this letter [i.e., by October 31, 2011].

[*8] Settlement Officer Jensen's letter also stated:

> For me to consider alternative collection methods such as an installment agreement or offer in compromise, you must provide any items listed below. In addition, you must have filed all federal tax returns required to be filed.
>
> \*     \*     \*     \*     \*     \*     \*
>
> The items to be provided are:
>
> > > Signed tax return(s) for the following tax periods.  Our records indicate they have not been filed:
> > > Type of Tax: <u>Individual Federal income Tax Form 1040</u>
> > > Period or Periods: <u>12/31/2007 12/31/2009 12/31/2010</u>
> >
> > > A current completed signed and dated Collection Information Statement Form 433-A for individuals with complete supporting documentation.
> >
> > > Complete copies of all pages for your personal bank statements from June 1, 2011 thru present.
> >
> > > Current wage statements showing year-to-date earnings.
> >
> > > Current investment statements.
> >
> > > To consider collection alternatives we will also need a current fee based professional appraisal from a disinterested third party for all real estate property owned.
> >
> > > Please provide a current mortgage statement showing the principal owed and the amount of your monthly payments.
> >
> > > You have stated on your Form 12153 a collection alternative that you are seeking is an installment agreement.  Please state the amount of your monthly payment and the frequency.  Be advised that any offer proposal will be analyzed as to assets, income as well as dissipated

**[\*9]** assets.  Hence the above aforementioned request for detailed information so as to facilitate the consideration of collection alternatives.  **Appeals cannot approve an installment agreement or accept an offer-in-compromise unless all tax returns are filed and estimated tax payments are made.  You must be in compliance with your filing of your tax returns.**

> You have stated on your Form 12153 a collection alternative that you are seeking is an offer in compromise.  Please provide Form 656 (Revision 03/2009) stating the amount and terms of the offer in compromise along with how you are going to fund the offer.  Also provide the applicable fees and payments.  **Appeals cannot approve an installment agreement or accept an offer-in-compromise unless all tax returns are filed and estimated tax payments are made. You must be in compliance with your filing of your tax returns.**

Please send me the items listed or checked above within 14 days from the date of this letter [i.e., by October 31, 2011].  I cannot consider collection alternatives at your conference nor can I consider alternatives during the hearing process without the information requested above. * * *

Mr. Sullivan made no reply by the October 31 deadline.[6]  Rather, on

November 7, 2011, Mr. Sullivan mailed a reply to Appeals, in which he stated:

---

[6]In his response to the Commissioner's motion for summary judgment, Mr. Sullivan states for the first time that he "<u>may have been</u> out of the country in October 2011 when Settlement Officer Jensen sent her first letter.  This would explain Petitioners delay in responding." (Emphasis added.)  It "would" indeed explain the delay, but Mr. Sullivan's statement that he "may have been" out of the country does not satisfy his obligation under Rule 121(d) to set forth facts "on personal knowledge", as opposed to surmise, and to do so not merely by allegations in his pleadings but "by affidavits or declarations or as otherwise provided in this Rule".  <u>Cf.</u> Rule 143(c) ("statements in briefs * * * do not constitute evidence"); <u>Bialo v. Commissioner</u>, 88 T.C. 1132, 1140 (1987).

> **[*10]** Thank you for your letter dated October 17, 2011 granting me a CDP hearing on the tax years shown above.
>
> I am unable to complete all the necessary paperwork by the date you have given. I do intend to complete what is required, however I need more time. * * *
>
> I do not wish to have a telephone hearing. I want a face-to-face hearing on the issues I qualify for. * * *
>
> Please schedule the hearing and notify me of the date, time, and place as I have met the requirements set by Congress for the hearing. * * *
>
> * * * * * * *
>
> * * * I am asking for a face-to-face hearing on following non-frivolous grounds:
>
> (1) Collection Alternatives
> (2) Offer in compromise
> (3) Payment Schedule
> (4) Possible Procedural Irregularities, for example has the amount of the assessment been verified and have all payments been posted to my account.
> (5) NCC (Not Currently Collectible)
> (8) [sic] Challenge the appropriateness of the collection action.
>
> The IRS code is very complex and difficult and I am trying to do my best.[7]

---

[7]The Internal Revenue Code may well be, in many respects, difficult and complex. However, Mr. Sullivan's tax liability has been resolved and is not in dispute; he has not shown any complexity that would be pertinent here; and his earnest-sounding plea that the Code is "complex and difficult and I am trying to do my best" is more boilerplate used by him, see Sullivan v. Commissioner, T.C. Memo. 2010-138, and others, see Declaration of Michael Garrett, Exhibit 26, Tarin v. Commissioner, docket No. 28327-10L ("The IRS code is very complex and difficult and I am trying to do my best"); Declaration of Robert V. Boeshaar,

(continued...)

**[\*11]** The U.S. Congress did not require the documents form 433-A and 1040 to be given to you before the hearing. Those documents can be presented at the face-to-face hearing for point-by-point discussion.

\*  \*  \*  \*  \*  \*  \*

I would like a copy of all information, documentation and administrative records you have on me before the CDP Hearing. Please send me Form 4340 with the transcripts and certificate. This is necessary for my CDPH.

---

[7](...continued)
Exhibit F, DeLong v. Commissioner, docket No. 12624-08L ("The IRS code is very complex and difficult and I am trying to do my best"); Petition, Exhibit G, Baxter v. Commissioner, docket No. 25628-11L ("The IRS code is very complex and difficult, and I am trying to do my best"); Petitioner's Response to Respondent's Motion for Summary Judgment, 21st page, Jennell v. Commissioner, docket No. 6720-09L ("The IRS code is very complex and difficult and I am trying to do my best"); Opposition to Motion for Summary Judgment, Exhibit B, Urtekar v. Commissioner, docket No. 25298-06L ("The IRS code is very complex and difficult and I am trying to do my best"); Declaration In Support of Motion for Partial Summary Judgment, Exhibit F, Haines v. Commissioner, docket No. 3648-08L ("The IRS code is very complex and difficult and I am trying to understand it to the best of my ability"); Declaration of Appeals Team Manager Debra A. Dufek, Exhibit I, Atkins v. Commissioner, T.C. Memo. 2011-12 (docket No. 18529-08L) ("The IRS code is very complex and difficult and I am trying to understand it to the best of my ability"); Objection to Motion for Summary Judgment, first attachment, Lindberg v. Commissioner, T.C. Memo. 2010-67 (docket No. 5421-08L) ("The IRS code is very complex and difficult and I am trying to do my best"); Declaration of Settlement Officer Tammy A. Green, Exhibit VVV, Shangler v. Commissioner, docket No. 20255-08L ("The IRS code is very complex and difficult and I am trying to understand it to the best of my ability"); Opposition to Motion for Summary Judgment, Exhibit A, Ewing v. Commissioner, docket No. 8602-07L ("The IRS code is very complex and difficult and I am trying to do my best").

**[\*12]** I will bring a tape recorder and/or court reporter, a representative and witnesses to my face to face hearing. Please give me 30 days written notice of the date, time and place of my face to face hearing.

Mr. Sullivan thus requested "more time" beyond the settlement officer's deadline of October 31, 2011; but Mr. Sullivan did not request a specific extension of time to a particular date.

Consistent with his November 7 letter, Mr. Sullivan did not telephone Appeals on November 10, 2011, to conduct the telephone hearing that Appeals had scheduled for that date. On that November 10 date--before receiving Mr. Sullivan's November 7 letter--Settlement Officer Jensen sent Mr. Sullivan a letter that stated as follows:

> I sent you a letter dated October 17, 2011 offering you a telephonic Collection Due Process conference. The conference was scheduled for November 10, 2011 at 11 am EST.
>
> You did not call at the scheduled time and you had not called to indicate that this date and/or time was not convenient.
>
> The conference letter also asked that you send me the information I needed to consider the issues you raised in your request for a hearing.
>
> - I never received the information from you.
>
> Please be advised that we will make a determination in the Collection Due Process hearing you requested by reviewing the Collection administrative file and whatever information you have already provided.

**[*13]** If you would like to provide information for our consideration, please do so within 14 days from the date on this letter [i.e., by November 24, 2011].

> We will promptly issue you a determination and/or decision letter with our findings.
>
> I look forward to hearing from you.  If you have questions, please call me at the telephone number shown above.

Settlement Officer Jensen thus gave Mr. Sullivan until November 24, 2011--i.e., 24 days beyond the original deadline of October 31, 2011--to provide the requested information.

> Mr. Sullivan did not make any response nor provide any information by November 24, nor at any other time.  He now explains that he

> was waiting to hear from Ms. Jensen in response to his November 7, 2011, letter to tell him when he was to submit his paperwork by.  Petitioner never did hear back from Ms. Jensen regarding this burning question in his mind, until he received the Notice of Determination.

The notice of determination

On January 30, 2012, after waiting an additional two months but having heard no more from Mr. Sullivan, Appeals issued a "Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330".  An attachment to the notice set out in detail Settlement Officer Jensen's action in the matter, and the notice ended with this "Summary of Determination":

**[*14]** The determination of Appeals is that the issuance of the Notice of Intent to Levy was appropriate and is sustained.  The IRS may proceed with enforced collection action.

The taxpayer did not call for the scheduled hearing or submit the requested financial information to consider a collection alternative.

Proceedings in this Court

Mr. Sullivan filed with this Court a petition dated February 21, 2012, which was not received until March 7, 2012.  The postmark on the mailing envelope is illegible, but we assume it was timely mailed, see secs. 6330(d)(1), 7502, and the IRS has not contended otherwise.

On June 28, 2012, the IRS filed a motion for summary judgment, in which it asserts:

> The Settlement Officer properly determined that petitioner was not eligible for collection alternatives because petitioner did not provide any financial information to the Settlement Officer and therefore, there was no abuse of discretion in sustaining the collection action.

The Court instructed Mr. Sullivan to file a response to the IRS's motion, and he did so.  He argues that Settlement Officer Jensen never answered his letter of November 7, 2011, or gave him a new deadline for submitting information; and he urges:

> Petitioner is willing to provide any documentation requested as long a[s] he is given a date to have it submitted by that is reasonable.  It is unreasonable for a poor working man to stop working just to fill out a bunch of

**[\*15]** paperwork that he doesn't understand and then to have to bother his friends to explain it to him, all within fourteen days.

## Discussion

I.   General legal principles

A.   Summary judgment

Under Rule 121 (the Tax Court's analog to Rule 56 of the Federal Rules of Civil Procedure), the Court may grant summary judgment where there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. The moving party (here, the Commissioner) bears the burden of showing that no genuine dispute as to any material fact exists, and the Court will view any factual material and inferences in the light most favorable to the nonmoving party. See Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). In this case the relevant facts on which the Commissioner relies are established by documents and are not in dispute.

B.   Collection review procedure

1.   In general

If a taxpayer fails to pay any Federal income tax liability after notice and demand, section 6331(a) authorizes the IRS to collect the tax by levy on the taxpayer's property. However, Congress has added to chapter 64 of the Code

[*16] certain provisions (in subchapter C, part I, and in subchapter D, part I) as "Due Process for Collections", and those provisions must be complied with before the IRS can proceed with a levy: The IRS must first issue a final notice of intent to levy and notify the taxpayer of the right to an administrative hearing before Appeals. Sec. 6330(a) and (b)(1). After receiving such a notice, the taxpayer may request an administrative hearing before Appeals. Sec. 6320(a)(3)(B), (b)(1). Administrative review is carried out by way of a hearing before Appeals pursuant to section 6330(b) and (c); and, if the taxpayer is dissatisfied with the outcome there, he can appeal that determination to the Tax Court under section 6330(d), as Mr. Sullivan has done.

2. Agency-level review in levy cases

At the CDP hearing, Appeals must make a determination whether the proposed collection action may proceed. In the case of a notice of levy, the procedures for the agency-level CDP hearing before Appeals are set forth in section 6330(c). Appeals is required to take into consideration several things:

First, Appeals must verify that the requirements of any applicable law or administrative procedure have been met by IRS personnel. See sec. 6330(c)(3)(A). The attachment to the notice of determination sets forth the Settlement Officer's compliance with these requirements, and Mr. Sullivan makes

**[*17]** no challenge as to verification in his response to the motion for summary judgment, so no verification issues under section 6330(c)(1) are at issue.

Second, the taxpayer may "raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy, including" challenges to the appropriateness of the collection action and offers of collection alternatives. Sec. 6330(c)(2)(A). Mr. Sullivan's contentions pertain to collection alternatives (i.e., an installment agreement, an offer-in-compromise, and CNC status[8]), which we will discuss below.

Additionally, the taxpayer may contest the existence and amount of the underlying tax liability, but only if he did not receive a notice of deficiency or otherwise have a prior opportunity to dispute the tax liability. Sec. 6330(c)(2)(B). Mr. Sullivan did have a prior opportunity to dispute his liability--and did in fact dispute it--in his previous deficiency cases; and he now acknowledges that his underlying tax liability is not at issue here.

---

[8]Part 8.22.5.6.1.1(6) of the Internal Revenue Manual ("IRM"), effective March 29, 2012, characterizes CNC status as being not a collection alternative but instead a "challenge to the appropriateness of collection action under IRC 6330(c)(2)(ii)", but this Court has treated CNC status as a "collection alternative", see Vinatieri v. Commissioner, 133 T.C. 392 (2009); Kyereme v. Commissioner, T.C. Memo. 2012-174; Marlow v. Commissioner, T.C. Memo. 2010-113; Lindberg v. Commissioner, T.C. Memo. 2010-67, and we will do so here, see also IRM pt. 8.22.3.11 (Dec. 27, 2011), 8.22.3.9 (Oct. 19, 2007).

**[\*18]** Finally, Appeals must determine "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." Sec. 6330(c)(3)(C). The notice of determination found that "The proposed enforced collections were appropriate and balanced the need for the efficient collection of the taxes with the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary because the taxpayer has not proposed any viable collection alternatives to enforced collections and has not cooperated with the tax." Mr. Sullivan's CDP request states in the most general terms that collection would be more intrusive than necessary, but he never elaborated on the point or supported it during the CDP hearing; and although his petition in this Court likewise stated a generality about intrusiveness, he did not repeat it in his opposition to the motion for summary judgment, much less elaborate on it or support it. We therefore hold that any distinct contention as to intrusiveness has been abandoned.

3.    Tax Court review

When Appeals issues its determination, the taxpayer may "appeal such determination to the Tax Court" pursuant to section 6330(d)(1), as Mr. Sullivan has done. As to issues other than the underlying liability (which is not at issue

**[\*19]** here), we review the determination for abuse of discretion. That is, we decide whether the determination was arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). We now review Appeals' denial of collection alternatives to determine whether it involved an abuse of discretion.

## II.     Denial of Mr. Sullivan's request for a collection alternative

In order to determine whether a taxpayer ought to be granted an offer-in-compromise (based on doubt as to collectibility), ought to be granted an installment agreement, or whether the taxpayer's account ought to be placed in CNC status,[9] Appeals must of course have information that enables it to evaluate the taxpayer's financial situation. As we have held, it is not an abuse of discretion for Appeals to reject collection alternatives and sustain the proposed collection action on the basis of a taxpayer's failure to submit requested financial information. See Wright v. Commissioner, T.C. Memo. 2012-24; Huntress v. Commissioner, T.C. Memo. 2009-161. Mr. Sullivan neither proposed specific

---

[9]IRM pt. 8.22.5.6.1.1(6) (Mar. 29, 2012) ("Appeals may not condition a face-to-face conference on receipt of financial information in a case in which the taxpayer specifically asks to have his/her account placed in CNC status") was promulgated after Mr. Sullivan's agency-level CDP hearing and was therefore not in effect as of the time of that hearing. Respondent's counsel has stated that the Office of Chief Counsel is reviewing this IRM provision.

**[\*20]** terms that Appeals could have evaluated nor provided any of the financial information that Appeals had requested, so Appeals certainly did not abuse its discretion in declining to enter into an installment agreement or to accept an offer-in-compromise. Likewise, Mr. Sullivan's failure to provide financial information prevented Appeals from being able to evaluate his qualification for CNC status, so Appeals certainly did not abuse its discretion in declining CNC status when it had no basis on which to make that determination.

Mr. Sullivan contends that he would have produced the information but that he needed and asked for more time, which Appeals unreasonably denied him. It is true that "an appeals officer's unreasonable denial of a request for more time to submit that [financial information] evidence would * * * be an abuse of discretion", Shanley v. Commissioner, T.C. Memo. 2009-17, slip op. at 12; but the undisputed facts in this case defeat Mr. Sullivan's contention. Appeals did grant him an extension of 24 days--from October 31 to November 24, 2011. And Appeals deferred ruling for another two months, during which Mr. Sullivan could still have submitted the information, since it is the policy of Appeals to consider financial information submitted past the deadline and up to the time of the issuance of the notice of determination. See IRM pt. 8.22.2.2.4.11(1)(C) (Oct. 30, 2007), 8.22.9.13(1) (Mar. 29, 2012).

**[\*21]** Mr. Sullivan's only answer is that he was waiting for Appeals to reply to his letter of November 7, 2011, which Appeals did not have in hand when it sent its letter of November 10, 2011, that granted the 24-day extension. That is, even though the IRS's November 10 letter granted the relief that Mr. Sullivan had requested (i.e., an extension), he felt entitled to stand pat until Appeals had actually written him a reply to his specific letter. This wrong-headed approach is consistent with the general gist of Mr. Sullivan's statements, which assume: that the taxpayer is entitled to dictate the course of the CDP proceedings (e.g., "Please give me 30 days written notice of the date, time and place of my face to face hearing"); that the CDP hearing is an occasion for the taxpayer to make broad demands for information from the IRS (e.g., "Please send me a copy of my entire administrative file including the Case Activity Record"); that Appeals' requests for information are an unreasonable imposition on a taxpayer, forcing him to "stop working just to fill out a bunch of paperwork"; and that the taxpayer can put the ball back in Appeals' court simply by lobbing another letter over the net, thereby effectively stalling the CDP hearing. This radically misunderstands the CDP process.

For the earliest year at issue here (2004), Mr. Sullivan's income tax was due no later than April 2005--more than six years before his CDP hearing. His

**[\*22]** liabilities were adjudicated; he certainly owed taxes identified in the levy notice; and as of November 2011 they were long overdue. It was the IRS's responsibility to collect those taxes, and the IRS was duly fulfilling that responsibility when it served Mr. Sullivan with the levy notice at issue here. The CDP request was Mr. Sullivan's statutorily granted occasion to stay that process in order to attempt to show the agency that it should show forbearance in the collection of his determined, overdue liabilities. However, not to the taxpayer but to the Secretary of the Treasury is given the duty to "prescribe all needful rules and regulations for the enforcement of" the Internal Revenue Code, sec. 7805(a), including the CDP provisions.[10] Mr. Sullivan is entitled to all the rights accorded

---

[10]Strictly speaking, Mr. Sullivan's letter of November 7, 2011, is literally correct in stating that "Congress did not require the documents form 433-A and 1040 to be given to you before the hearing"; but his point overlooks the fact that Congress authorized the agency to establish the CDP procedures. When Mr. Sullivan argues that "[t]hose documents can be presented at the face-to-face hearing for point-by-point discussion", he imagines a procedure that would prevent Appeals from evaluating the taxpayer's situation in preparation for the hearing. In fact, 26 C.F.R. section 301.6330-1(e), Proced. & Admin. Regs., provides that "Taxpayers will be expected to provide all relevant information requested by Appeals, including financial statements, for its consideration of the facts and issues involved in the hearing." Since Mr. Sullivan had requested collection alternatives that required the submission of financial information, Appeals followed the procedure prescribed by the IRS by requesting this information from Mr. Sullivan before the granting of a face-to-face CDP hearing, see IRM pt. 8.22.2.2.6.4(5), (8) (Dec. 9, 2011); and it can hardly be considered an abuse of discretion for Appeals to do so where that information is necessary for the disposition that the taxpayer has requested. Ironically, on the other hand, Mr. Sullivan's November 7 letter would

(continued...)

[*23] him in the statute, and he is entitled to reasonable treatment by the agency; but he is not entitled to prescribe the CDP procedures or to set his own deadlines.

In light of the foregoing, the Commissioner's motion for summary judgment will be granted.

<u>An appropriate order and decision will be entered</u>.

---

[10](...continued)
require Appeals to provide <u>to the taxpayer</u> "all information, documentation and administrative records you have on me <u>before the CDP Hearing</u>. Please send me Form 4340 with the transcripts and certificate. <u>This is necessary for my CDPH</u>." (Emphasis added.) Mr. Sullivan's inversion of the actual dynamic reflects his fallacy that the principal purpose of the CDP hearing is (he believes) to allow scrutiny of the IRS by the delinquent taxpayer, rather than its actual purpose--i.e., to enable the IRS to evaluate the taxpayer's circumstances.