152 T.C. No. 3

UNITED STATES TAX COURT

CRAIG S. WALQUIST AND MARIA L. WALQUIST, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25257-17.                        Filed February 25, 2019.

R through his Automated Correspondence Exam system
determined, for Ps' 2014 tax year, a deficiency in tax and a penalty
for an underpayment attributable to a substantial understatement of
income tax. R's computer program generated a 30-day letter inviting
Ps to reply and submit relevant information. When Ps declined to
respond, the program generated and issued to them a notice of defic-
iency in the form of a Letter 3219. This letter again invited Ps to
contact R, but they did not do so.

Ps timely petitioned this Court, advancing numerous frivolous
arguments. Ps refused to participate in the pretrial process and failed
to appear for trial. They persisted in advancing frivolous arguments
despite our warnings that they risked dismissal and additional
penalties if they continued down that path. R moved to dismiss the
case for lack of proper prosecution by Ps.

Held: Penalties determined under I.R.C. sec. 6662(a) and
(b)(2) by an IRS computer program without human review are "auto-

matically calculated through electronic means" within the meaning of I.R.C. sec. 6751(b)(2)(B) and thus are exempt from the written supervisory approval requirement of I.R.C. sec. 6751(b)(1).

Held, further, R has met his burden of production with respect to establishing Ps' unreported income and with respect to the I.R.C. sec. 6662 penalty as required by I.R.C. sec. 7491(c).

Held, further, R's motion to dismiss for lack of prosecution will be granted, and the deficiency and penalty determined by the IRS, as reduced by the concession in R's answer, are sustained.

Held, further, Ps shall pay to the United States a penalty of $12,500 pursuant to I.R.C. sec. 6673(a)(1) because they have repeatedly advanced frivolous positions during this case.

Craig S. Walquist and Maria L. Walquist, pro sese.

Ryan Z. Sarazin and Bartholomew Cirenza, for respondent.

OPINION

LAUBER, Judge:  With respect to petitioners' Federal income tax for 2014, the Internal Revenue Service (IRS or respondent) determined a deficiency of $13,832 and an accuracy-related penalty of $2,766.  Currently before the Court is respondent's motion to dismiss for lack of proper prosecution by petitioners.  We

will grant the motion. We will also impose on petitioners a penalty of $12,500 for repeatedly taking frivolous positions during this proceeding. See sec. 6673(a).[1]

Background

On August 30, 2017, the IRS sent petitioners by certified mail a timely notice of deficiency determining a deficiency in tax and an accuracy-related penalty as set forth above. Petitioners filed a petition purporting to challenge the notice of deficiency. Though residing in Minnesota when filing their petition, they requested Washington, D.C., as their place of trial.

Petitioners filed a Federal income tax return for 2014. They failed to report $1,215 of unemployment compensation received from the State of Minnesota. They reported wages and other gross income totaling $94,114. Against this sum they claimed a purported offset or deduction of $87,648, which they labeled a "Remand for Lawful Money Reduction." After the standard deduction they reported negative taxable income of ($5,731).

Alerted to petitioners' underreporting by computer document matching, the IRS processed the examination of their return through its Automated Correspondence Exam (ACE) system, employing its Correspondence Examination Automated

---

[1]All statutory references are to the Internal Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round most monetary amounts to the nearest dollar.

Support (CEAS) software program. This software is designed to process cases "with minimal to no tax examiner involvement until a taxpayer reply is received." Internal Revenue Manual (IRM) pt. 4.19.20.1.1 (Dec. 18, 2017).

On July 26, 2017, the CEAS program generated and issued to petitioners a Letter 525, General 30-Day Letter. In cases such as this--where the understatement of income tax calculated by the program exceeds the greater of $5,000 or 10% of the tax required to be shown on the return--the program systematically includes in the letter a substantial understatement penalty. See sec. 6662(b)(2), (d)(1)(A). The program accordingly calculated a penalty of $2,766.40, or 20% of the proposed deficiency of $13,832. See sec. 6662(a).

The 30-day letter informed petitioners of the deficiency and penalty that the IRS proposed. If they disagreed with the proposed changes, they were instructed to respond by letter, telephone, or fax and submit any supporting information they wished the IRS to consider. If they had responded to this letter, a tax examiner would have considered their response and made any appropriate adjustments. Petitioners declined to reply to the 30-day letter.[2]

_____

[2]The CEAS software program records "status codes" to denote the status of a taxpayer's case during the automated examination process. If petitioners had responded to the 30-day letter, or to any other IRS communication before issuance of a notice of deficiency, a status code of 54, 55, or 57 would appear between the

(continued...)

On August 30, 2017, after petitioners had failed to reply to the 30-day letter, the CEAS program generated and issued to them by certified mail a notice of deficiency in the form of a Letter 3219. This notice of deficiency determined tax adjustments and a substantial understatement penalty as previously set forth in the 30-day letter. The notice invited petitioners to "send information we requested" or direct questions by telephone to the IRS contact person whose phone number appeared on the letter. Petitioners again declined to communicate with the IRS. The penalty determined in the notice of deficiency was not reviewed before issuance of that notice by any human IRS examiner.

On November 27, 2017, petitioners submitted to this Court a purported petition that consisted of a copy of the notice of deficiency, on each page of which they had written "REFUSAL FOR CAUSE." Petitioners appended various documents containing assertions commonly advanced by tax protesters, including assertions that U.S. currency is not "lawful money" and that they "have no obligations or liability to even file a return" because they "intend to only handle legal money." Petitioners also advanced the more novel (but equally frivolous) argu-

----

[2](...continued)
status code for the 30-day letter and the status code for the notice of deficiency. See IRM pt. 4.19.20.2.6.3 (Jan. 8, 2015). None of those status codes appears on petitioners' case summary in the CEAS program.

ment that this Court should garnish the wages of the Secretary of the Treasury for an amount equal to petitioners' outstanding tax liability.

At the Court's direction petitioners filed an amended petition on January 23, 2018. The amended petition asserted that petitioner husband "has no tax liability for tax year 2014," but adduced no facts to support that position. Instead petitioners reiterated their demand that the Court garnish the wages of the Secretary of the Treasury.

On March 8, 2018, respondent filed an answer to petitioners' amended petition. Respondent alleged that the amounts remaining in dispute for 2014 were a deficiency of $12,220 and an accuracy-related penalty of $2,444.[3] He noted that petitioner Craig Walquist (who sometimes refers to himself as "Craig Steven") had filed a complaint in the U.S. District Court for the District of Minnesota making assertions resembling those appearing in the petition. Steven v. Mnuchin, No. 17-MC-61 (D. Minn. filed Nov. 27, 2017). Upon reviewing that complaint, a magis-

---

[3]These amounts are lower than those set forth in the notice of deficiency. See supra pp. 4-5. Respondent explained that the CEAS program had determined the deficiency and penalty by calculating the tax due on petitioners' income as shown by third-party reports, without accounting for the income actually reported on their return. Because petitioners' offsetting "Remand for Lawful Money Reduction" was less than their reported income, they in fact reported $6,466 of gross income. Our decision in this case will reflect the reduced deficiency and penalty as alleged in respondent's answer.

trate judge promptly determined that "[e]very aspect" of petitioners' position was frivolous. Report and Recommendation at 2, Steven v. Mnuchin, No. 17-MC-61 (D. Minn. Dec. 8, 2017). The District Court dismissed the complaint as frivolous on January 29, 2018. Respondent advised this Court that he was "sending a letter to petitioners warning them [that] their arguments were frivolous and * * * that they could be subject to a penalty" under section 6673(a).

On June 7, 2018, petitioners mailed to the Court a purported "stipulation of facts," which did not remotely resemble a stipulation of facts. In that document they "refuse[d] for cause" respondent's request that they attend a pretrial conference to prepare this case for trial. See Rules 70(a), 91; Branerton Corp. v. Commissioner, 61 T.C. 691 (1974). Petitioners refused to attend a conference with respondent's counsel on the basis of frivolous assertions that: (1) a meeting would constitute an "ex parte proceeding," (2) the Judges of this Court had not taken proper oaths of office and had "no capacity to utter anything," (3) the Clerk and Chief Judge of this Court "are racketeering and conspiring to avoid entry of facts and evidence into the record," and (4) "the US Tax Court Clerk * * * is bound to execute garnishment against Steven Terner Mnuchin."

On June 19, 2018, we issued an order directing petitioners to comply with this Court's Rules or risk dismissal of their case. We advised them that our Rules

require that they confer with respondent's counsel to prepare this case for trial and that they stipulate, to the fullest extent possible, facts and documents as to which there should be no reasonable dispute. See Rule 91(a). We warned them that, if they continued to advance frivolous arguments as a basis for refusing to comply with our Rules, we were authorized to hold them in default and dismiss their case. See Rule 123(a) and (b). We directed that they "immediately contact respondent's counsel for purposes of scheduling a pre-trial conference."

Our order advised petitioners, as respondent had already done, that section 6673(a)(1) authorizes the Court to impose a penalty of up to $25,000 if it appears that a taxpayer has instituted proceedings primarily for delay or has taken a position that "is frivolous or groundless." We noted that their previous submissions to the Court had included frivolous arguments and warned them that "they risk a significant penalty if they continue on this path."

Petitioners ignored our order and did not contact respondent's counsel to schedule a pretrial conference. On September 5, 2018, respondent filed a motion to dismiss this case for lack of proper prosecution by petitioners. Counsel for respondent represented that he had received no communication from petitioners during the ten weeks since the Court issued its June 19, 2018, order. He represented

that he had sent petitioners two letters seeking to arrange a conference and that petitioners had ignored those letters as well as his followup telephone calls.

On September 13, 2018, we ordered petitioners to show cause in writing, by October 2, 2018, why this case should not be dismissed for lack of proper prosecution. We warned them again that they risked dismissal if they did not respond appropriately to our order.

By way of response petitioners submitted, on September 20, 2018, a document captioned "True Bill of Indictment--Testimony Inherent." In this document they again demanded garnishment of the wages of the Secretary of the Treasury, stating incoherently that "demand is made for redemption of central banking currency in Lawful Money in all transactions pursuant to * * * the Federal Reserve Act." They asserted that this Court lacks authority to decide this case, alleging that "the 'Chief Justice' of the US Supreme Court is only pretending to be a judicial officer [and] there is no competence to be found in the US Tax Court." Elaborating on the latter theme petitioners continued as follows:

> Any and all utterances by "Judge" Lauber are Refused for Cause timely as expressed herein with the first pages of [this Court's orders marked] "Refusal for Cause" conspicuously across their face. Mr. Lauber is no judicial officer and the US Tax Court * * * is not a court of record and therefore not a court of competent jurisdiction. * * * [Petitioner husband] is excused from tax liability through law about his redemption and the redemption of lawful money. All agents and

Principal Steven Terner Mnuchin as US Governor of the International Monetary Fund are notified. * * *  Therefore the US Tax Court is notified there will be no trial.  Thank you for your testimony, everybody.

The case was called from the calendar for the trial session of the Court in Washington, D.C., on October 22, 2018.  There was no appearance by or on behalf of petitioners.  Counsel for respondent appeared and urged that his motion to dismiss for lack of proper prosecution be granted.

Discussion

I.     Burdens of Production and Proof

The Commissioner's determination of tax liability is generally presumed correct.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Deductions are a matter of legislative grace, and taxpayers bear the burden of proving entitlement to deductions allowed by the Code and of substantiating the amounts of claimed deductions.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), Income Tax Regs.  It goes without saying that petitioners have not carried their burden of proving entitlement to a deduction of $87,648 for "Remand for Lawful Money Reduction."

In his motion to dismiss for lack of prosecution, respondent acknowledges that he bears a burden of production with respect to petitioners' unreported income

and with respect to their liability for the substantial understatement penalty. Respondent urges that he has discharged both of these burdens, and we agree.

A.    Unreported Income

In unreported income cases the Commissioner must establish a "minimal evidentiary showing" connecting the taxpayer with the alleged income-producing activity, see Blohm v. Commissioner, 994 F.2d 1542, 1548-1549 (11th Cir. 1993), aff'g T.C. Memo. 1991-636, or demonstrate that the taxpayer actually received unreported income, see Edwards v. Commissioner, 680 F.2d 1268, 1270 (9th Cir. 1982). Once the Commissioner makes the required threshold showing, the burden shifts to the taxpayer to prove by a preponderance of the evidence that the Commissioner's determinations are arbitrary or erroneous. Helvering v. Taylor, 293 U.S. 507, 515 (1935); Tokarski v. Commissioner, 87 T.C. 74 (1986); see also Page v. Commissioner, 58 F.3d 1342, 1347 (8th Cir. 1995), aff'g T.C. Memo. 1993-398.

On their 2014 return petitioners reported wages and other gross income totaling $94,114. The only income they received but failed to report consisted of unemployment compensation of $1,215 from the State of Minnesota. Respondent has supplied a copy of petitioners' Wage and Income Transcript, which shows that unemployment compensation of $1,215 was paid by the State of Minnesota and reported to the IRS on Form 1099-G, Certain Government Payments. As respon-

dent notes in his motion, petitioners "have not disputed the accuracy" of this information return, and it goes without saying that they have not "fully cooperated with the Secretary" during the IRS examination. Cf. sec. 6201(d) (providing that the IRS in certain circumstances "shall have the burden of producing reasonable and probative information * * * in addition to such information return"). Respondent has thus met his burden of production with respect to unreported income.

B.     Substantial Understatement Penalty

Section 7491(c) generally provides that "the Secretary shall have the burden of production in any court proceeding with respect to the liability of any individual for any penalty." This burden requires the Commissioner to come forward with sufficient evidence indicating that imposition of the penalty is appropriate. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once he meets his burden of production, the burden of proof is on the taxpayer to "come forward with evidence sufficient to persuade a Court that the Commissioner's determination is incorrect." Id. at 447.

The Commissioner's burden of production under section 7491(c) includes establishing compliance with section 6751(b), which requires that penalties be "personally approved (in writing) by the immediate supervisor of the individual making such determination." See Chai v. Commissioner, 851 F.3d 190, 217, 221-

222 (2d Cir. 2017), aff'g in part, rev'g in part T.C. Memo. 2015-42; Graev v. Commissioner (Graev III), 149 T.C. __ (Dec. 20, 2017), supplementing and over-ruling in part Graev v. Commissioner (Graev II), 147 T.C. 460 (2016).

The statute creates two explicit exceptions to this supervisory approval requirement. Supervisory approval is not required for "any addition to tax under section 6651, 6654, or 6655." Sec. 6751(b)(2)(A). And supervisory approval is not required for "any other penalty automatically calculated through electronic means." Sec. 6751(b)(2)(B). Whether an accuracy-related penalty determined by an IRS computer program is a "penalty automatically calculated through electronic means" does not appear to have been decided in any published Opinion of this Court.[4]

"We begin our inquiry, as we must, by considering the plain and ordinary meaning of the text Congress enacted." Klein v. Commissioner, 149 T.C. __, __

---

[4]In two Memorandum Opinions that preceded this Court's Opinion in Graev III, we held that certain other penalties were automatically calculated through electronic means. See Grace Found. v. Commissioner, T.C. Memo. 2014-229, 108 T.C.M. (CCH) 513, 516-517 (holding that supervisory approval was not required for a section 6652(c) delinquency penalty for failure by a tax-exempt organization to file an annual return); Lindberg v. Commissioner, T.C. Memo. 2010-67, 99 T.C.M. (CCH) 1273, 1279 (holding that supervisory approval was not required for a section 6702 penalty for filing a frivolous tax return). We did not decide this question in Graev II, where the IRS did not contend that the section 6751(b)(2) exception applied. See 147 T.C. at 477 n. 10.

(slip op. at 17) (Oct. 3, 2017) (citing <u>Jimenez v. Quarterman</u>, 555 U.S. 113, 118 (2009), and <u>Rainero v. Archon Corp.</u>, 844 F.3d 832, 837 (9th Cir. 2016)). "In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." <u>K Mart Corp. v. Cartier, Inc.</u>, 486 U.S. 281, 291 (1988); <u>see also</u> <u>Yari v. Commissioner</u>, 143 T.C. 157, 164 (2014) ("We interpret statutes 'in their context and with a view to their place in the overall statutory scheme.'" (quoting <u>FDA v. Brown & Williamson Tobacco Corp.</u>, 529 U.S. 120, 133 (2000))), <u>aff'd</u>, 669 F. App'x 489 (2016).

For individual taxpayers, the substantial understatement penalty applies if the understatement of income tax for a particular year "exceeds the greater of-- (i) 10 percent of the tax required to be shown on the return * * * , or (ii) $5,000." Sec. 6662(d)(1)(A). The penalty (as relevant here) is calculated at a flat rate of 20% of the "underpayment of tax required to be shown on * * * [the] return." <u>See</u> sec. 6662(a). This penalty is thus calculated mathematically, both in terms of whether it applies and the rate at which it is imposed.

The IRS processed the examination of petitioners' 2014 return through its ACE system, employing its CEAS software program. This software program ascertained through third-party document matching that petitioners had total income

of $95,327.[5]  The program computed a tax liability of $13,832 and calculated a

penalty equal to 20% of that sum ($13,832 × 20% = $2,766.40).  When petitioners

failed to respond to the computer-generated 30-day letter, the CEAS program

automatically generated a notice of deficiency setting forth a deficiency and pen-

alty in these amounts.  Because the penalty was determined mathematically by a

computer software program without the involvement of a human IRS examiner,

we conclude that the penalty was "automatically calculated through electronic

means," sec. 6751(b)(2)(B), as the plain text of the statutory exception requires.

This conclusion is consistent with the IRS' interpretation of its obligations

under section 6751, as set forth in the IRM.[6]  The IRM explains that the agency's

general practice is to require written approval of all penalties by the immediate

supervisor of the examiner proposing the penalty, while noting that penalties

automatically calculated through electronic means are excluded from this require-

ment.  See IRM pt. 4.19.13.5.2 (Jan. 1, 2016).  In 2018 the IRM was amended to

---

[5]The difference between $95,327 and $94,114 (the total income reported on petitioners' return) is $1,213.  The discrepancy between that sum and the $1,215 of unreported unemployment compensation is explained by petitioners' use of an erroneous convention for rounding monetary amounts.

[6]"While the IRM does not have the force of law, the manual provisions do constitute persuasive authority as to the IRS's interpretation of the statute."  Ginsberg v. Commissioner, 127 T.C. 75, 87 (2006).

state explicitly that substantial understatement penalties determined by the CEAS

software program are exempt from the supervisory approval requirement:

> Correspondence examination cases in which the Substantial Under-
> statement Penalty is systemically asserted will fall within the excep-
> tion for penalties automatically calculated through electronic means if
> the taxpayer does not submit any response to the 30-day letter pro-
> posing the penalty.  However, if the taxpayer submits a response,
> written or otherwise, that challenges the penalty, or the amount of tax
> to which the penalty is attributable, then the immediate supervisor of
> the Service employee considering the response must input the CEAS
> non-action note specifically approving the penalty prior to the issu-
> ance of any SNOD [statutory notice of deficiency] that includes the
> penalty.  [IRM pt. 4.19.13.6.2(5) (Feb. 9, 2018).[7]]

The IRM sets out a similar position regarding other computer-determined

penalties, such as those calculated through the Automated Underreporter

program.[8]

---

[7]The IRM provision in effect during 2017, like that in effect during 2018, indicated that a manager would indicate penalty approval for penalties including a substantial understatement penalty "by leaving a CEAS non-action note specifi-cally stating which penalty is approved."  Compare IRM pt. 4.19.13.5.2(2) (Jan. 1, 2016) with IRM pt. 4.19.13.6.2(2) (Feb. 9, 2018).  The 2018 version clarified that the circumstances in which a CEAS non-action note would be applied was when "the taxpayer submits a response * * * [to the 30-day letter] that challenges the penalty, or the amount of tax to which the penalty is attributable."   IRM pt. 4.19.13.6.2(5).

[8]See IRM pt. 20.1.5.1.4 (4) (Dec. 13, 2016) (stating that supervisory ap-proval is not required if the penalty is calculated by computer "without an employ-ee independently determining the appropriateness of the penalty"); see also id. pt. 4.19.25.5 (July 26, 2018) (reasoning similarly regarding penalties calculated under

(continued...)

The context in which the statutory exception appears supports our conclusion that supervisory approval in these circumstances is not required. The exception for penalties "automatically calculated through electronic means" appears in parallel with the exception for "any addition to tax under section 6651, 6654, or 6655." Compare sec. 6751(b)(2)(A) with sec. 6751(b)(2)(B). Section 6651 provides that "there shall be added" to the tax additions to tax for failure to file and failure to pay, subject to a "reasonable cause" defense. See Estate of Cavenaugh v. Commissioner, 100 T.C. 407, 426 (1993) (holding that the addition to tax is mandatory unless reasonable cause is shown), aff'd in part and rev'd on other grounds, 51 F.3d 597 (5th Cir. 1995). Additions to tax under section 6651 are mathematical in nature, can be computed through a simple formula, and are generally calculated automatically by computer. See IRM pt. 8.17.7.3(4) (Sept. 24, 2013) (failure to file), 8.17.7.4(4) (Mar. 31, 2014) (failure to pay).

Sections 6654 and 6655 similarly provide that "there shall be added to the tax" additions to tax for failure to pay estimated tax. These additions are mandatory unless the taxpayer qualifies for an explicit statutory exception. See Grosshandler v. Commissioner, 75 T.C. 1 (1980); Ward v. Commissioner, T.C. Memo.

---

[8](...continued)
section 6721(a)); id. pt. 4.19.4.7.1 (Mar. 28, 2018) (reasoning similarly regarding penalties calculated under section 6721(e)).

1995-286, aff'd sub nom. I&O Pub'g Co. v. Commissioner, 131 F.3d 1314 (9th Cir. 1997).  Additions to tax under sections 6654 and 6655, like those under section 6651, are mathematical in nature, can be computed through a simple formula, and are generally calculated automatically by computer.  See IRM pt. 8.17.7.8(2) (Sept. 24, 2013).

Substantial understatement penalties, when computer-determined by the CEAS program, resemble additions to tax under sections 6651, 6654, and 6655. The penalty is determined mathematically according to a formula derived from the statutory text.  See sec. 6662(a), (b)(2), (d)(1)(A).  And the penalty is mandatory, subject to statutory exceptions including "reasonable cause."  See Bennet v. Commissioner, T.C. Memo. 2010-114; see also Palm Canyon X Invs., LLC v. Commissioner, No. 16-1334, 2018 WL 1326394, at *1 (D.C. Cir. Feb. 16, 2018) ("Section 6662 of the Internal Revenue Code imposes a mandatory penalty."), aff'g T.C. Memo. 2009-288.

Computer-determined penalties likewise resemble additions to tax in that they typically do not raise the concern that prompted Congress to enact the supervisory-approval requirement.  Congress' goal in enacting section 6751(b)(1) was to ensure that penalties are "only * * * imposed where appropriate and not as a bargaining chip."  See S. Rept. No. 105-174, at 65 (1998), 1998-3 C.B. 537, 601.

"The statute was meant to prevent IRS agents from threatening unjustified penalties to encourage taxpayers to settle." Chai, 851 F.3d at 219 (citing legislative history). Where, as here, a penalty is determined by a computer software program and never reviewed by a human being, it could hardly be considered a "bargaining chip." Rather, like an addition to tax under section 6651, 6654, or 6655, it is added to the tax automatically according to a predetermined mathematical formula.

If the penalty imposed here were not considered a "penalty automatically calculated through electronic means," it is difficult to conceive what type of penalty would qualify for the statutory exception that Congress placed in section 6751(b)(2)(B). "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) (quoting Duncan v. Walker, 533 U.S. 167, 174 (2001)). We must reject any construction of the statute that would render the section 6751(b)(2)(B) exception "insignificant, if not wholly superfluous." Ibid. (quoting Duncan, 533 U.S. at 174).

Conversely, if we were to construe the penalty here as requiring supervisory approval, it is hard to imagine how the IRS would demonstrate satisfaction of this

requirement. Section 6751(b)(1) requires that the initial determination of a penalty assessment be "personally approved (in writing) by the immediate supervisor of the individual making such determination." The penalty at issue was calculated and instantiated in letter form by a computer software program. Because the computer did this without human intervention, no "individual making such determination" appears to exist. And if the computer itself were regarded as "the individual making such determination"--that would be difficult to square with the statute's plain text--we would have to determine who "the immediate supervisor" of the computer (or the software program) is. As Lear said prophetically on the heath: "[T]hat way madness lies."[9]

For these reasons, we conclude that the substantial understatement penalty at issue here, having been determined by an IRS computer program without human input or review, was a "penalty automatically calculated through electronic means" within the meaning of section 6751(b)(2)(B).[10] Because the penalty as

---

[9]William Shakespeare, King Lear, act 3, sc. 4.

[10]Our conclusion to this effect is consistent with unpublished orders previously issued by this Court. See Washington v. Commissioner, T.C. Dkt. No. 27141-16S (Nov. 28, 2017) (concluding that supervisory approval was not required for a computer-calculated substantial understatement penalty when the taxpayer did not respond to the initial IRS notice); McGee v. Commissioner, T.C. Dkt. No. 13535-16SL (Sept. 29, 2017) (same); see also Priem v. Commissioner,

(continued...)

such was excepted from the written supervisory approval requirement of section 6751(b)(1), respondent has no burden of production on this count.

The notice of deficiency determined an understatement of income tax of $13,832, which respondent agrees must be reduced to $12,220. See supra note 3. This amount comfortably exceeds $5,000 and 10% of the total tax required to be shown on petitioners' 2014 return. Respondent has thus carried his burden of production for the penalty by demonstrating a "substantial understatement of income tax." See sec. 7491(c).

II.    Motion To Dismiss

Rule 123(b) provides:  "For failure of a petitioner properly to prosecute or to comply with these Rules or with any order of the Court * * * , the Court may dismiss a case at any time and enter a decision against the petitioner."  We have construed Rule 123 liberally to permit entry of a judgment of default or dismissal consistently with our sound discretion and the interests of justice. See Stringer v. Commissioner, 84 T.C. 693, 706 (1985), aff'd without published opinion, 789 F.2d 917 (4th Cir. 1986).  We have entered judgments of default or dismissal

_____

[10](...continued)
T.C. Dkt. No. 2325-17 (Sept. 5, 2018) (granting motion to dismiss for lack of prosecution in these circumstances); Chatfield v. Commissioner, T.C. Dkt. No. 26801-16 (July 19, 2018) (same).

where a taxpayer (among other things):  (1) unreasonably refused to stipulate facts or the authenticity of documents, Long v. Commissioner, 742 F.2d 1141 (8th Cir. 1984); (2) failed to comply with Court-ordered discovery, Rechtzigel v. Commissioner, 79 T.C. 132 (1982), aff'd per curiam, 703 F.2d 1063 (8th Cir. 1983); and/or (3) failed to appear for trial, Ritchie v. Commissioner, 72 T.C. 126 (1979); see also Bond v. Commissioner, T.C. Memo. 2012-313; Carlo v. Commissioner, T.C. Memo 2005-165; Bixler v. Commissioner, T.C. Memo. 1996-329.

Petitioners failed to comply with this Court's Rules by repeatedly refusing to confer with respondent's counsel to prepare this case for trial.  They failed to comply with our June 19, 2018, order directing them to "immediately contact respondent's counsel for purposes of scheduling a pre-trial conference."  They failed to file a meaningful response to our September 13, 2018, order that they show cause why this case should not be dismissed.  And they failed to appear for trial, notwithstanding their receipt of two separate notices informing them of the trial date.  We warned petitioners that they risked dismissal if they did not comply with our Rules, but they persisted in their intransigence.  We will accordingly grant respondent's motion and dismiss this case for lack of proper prosecution by petitioners.

III.    Section 6673 Penalties

Section 6673(a)(1) authorizes this Court to require a taxpayer to pay to the United States a penalty not in excess of $25,000 "[w]henever it appears to the Tax Court" that a taxpayer has instituted or maintained proceedings "primarily for delay" or has taken a position that "is frivolous or groundless."  The purpose of section 6673 is to compel taxpayers to conform their conduct to settled tax principles and to deter the waste of judicial resources.  See Coleman v. Commissioner, 791 F.2d 68, 71 (7th Cir. 1986); Williams v. Commissioner, 151 T.C. __, __ (slip op. at 15) (July 3, 2018); Winslow v. Commissioner, 139 T.C. 270, 276 (2012); Salzer v. Commissioner, T.C. Memo. 2014-188.

Petitioners have advanced numerous frivolous positions in this case, both in their petition and in their subsequent filings.  They have persisted in advancing these arguments despite warnings, both from respondent and from the Court, that they risked a substantial penalty if they did not desist.  They did not desist.  We will accordingly order them to pay to the United States a penalty of $12,500.

To reflect the foregoing,

An appropriate order and decision will be entered for respondent.